■ In the Matter of MID-ISLAND HOSPITAL, Respondent, v. GEORGE K. WYMAN, as Commissioner of Social Welfare of the State of New York, et al., Appellants.— In a proceeding under article 78 of the CPLR, the Commissioner of Social Welfare of the State of New York and Associated Hospital Service of New York (hereafter called "AHS") appeal from a judgment of the Supreme Court, Queens County, entered September 29, 1964, and from an underlying order of said court, entered November 29, 1963, each of which annulled a separate determination of the Commissioner of Social Welfare, dated March 2, 1964 and March 4, 1963, respectively, and remanded the matter to him for reconsideration and for the making of findings. The Commissioner's 1963 determination was that the rates which AHS had established for its payments to petitioner for 1961 were adequate. His 1964 determination was that petitioner had no legal right to a determination by the Commissioner of the adequacy of such rates. Order entered November 29, 1963 reversed on the law and determination of the Commissioner of Social Welfare dated March 4, 1963 confirmed, without costs. The findings of fact made by Special Term in connection with that order have not been considered. Appeal, insofar as it is from the judgment entered September 29, 1964, dismissed, without costs. In 1955 one Dr. Werner, three other doctors and a builder formed a corporation named Toren, Inc., for the purpose of building the private hospital which houses petitioner Mid-Island Hospital. The building was sold in the same year to Simon Cohen Realty Company for $3,000,000. The purchaser paid $1,000,000 in cash, assumed a building loan of about $750,000 and gave Toren a purchase-money second mortgage for $1,250,000. At or about the same time, the premises were leased back to Toren for a term of 30 years with renewal options at an annual rental of $350,000 plus all real estate taxes. Toren in turn subleased the hospital and equipment to Dr. Werner, who, in June, 1955, was granted a license to operate the premises as Mid-Island Hospital. In the same year Mid-Island entered into a contract with AHS to service its subscribers. In applying for membership in AHS, Mid-Island agreed to accept as compensation for such service "payments in such amounts and upon such basis as shall be determined from time to time by your Board of Directors and subject to the necessary approval by the Commissioner of Social Welfare of the State of New York and the Superintendent of Insurance of the State of New York." The Insurance Law (§ 254, subd. 2) provides that the rates of payments to be made by AHS to member hospitals must be approved as to adequacy by the Commissioner of Social Welfare and as to reasonableness by the Superintendent of Insurance. Until 1960 AHS computed the rate of compensation to member hospitals under the "Index Method", and during these years it took into consideration in its calculations the entire $350,000 in rent which Dr. Werner paid to Toren. In 1960 AHS revised its reimbursement formula to conform to recommendations made in the Trussel Report which had been prepared by Columbia University for the Superintendent of Insurance and the Department of Health. AHS notified its member hospitals that a new formula was being evolved. The first notification was in February of 1960, another notification took place in August of that year and in October of 1960 an AHS representative personally called at Mid-Island and discussed the new formula with Mid-Island personnel at some length. The formula was adopted by the directors of AHS in September of 1960 and was approved in the same month as to reasonableness by the Superintendent of Insurance and was approved as to adequacy by the Commissioner of Social Welfare soon afterward. The formula was effective for the year 1960, but computa-

tions under the formula could not be made until the member hospitals had closed their books for the year. Statistical report forms were sent to the various member hospitals on January 30, 1961. It was not until February of 1962 that AHS completed its audit of Mid-Island operations for 1960. In arriving at the reimbursement rate for 1960, AHS allowed Mid-Island the entire $350,000 it had paid as rent to Toren. About two months later however, when AHS completed its audit of Mid-Island for the year 1961, it disallowed the item of $350,000 as rent, claiming that this rental was not reasonable. The new formula contains special provisions pertaining to proprietary hospitals. Subdivision E of article III of this formula reads as follows: "1. Rent Expense. The amount of rent paid for the hospital premises * * * will be included **in reimbursable expense** provided: (a) There is no substantial affiliation between the owners and operators of the hospital and the owners of the premises and equipment of the hospital and (b) The amount of rent is reasonable in light of comparable costs incurred by other proprietary hospitals which own the equip- **ment and premises** in which they operate. It shall be considered a substantial affiliation for the purposes of (a) above where the owners and operators of the hospital have in the aggregate contributed, whether by means of equity invest- ment, loan or otherwise, more than 25% of the capital used for the purchase or construction of the equipment and premises of the hospital." AHS allowed Mid-Island a rental which represented the highest figure arrived at under three different formulas which it employed where the actual rent was disallowed. The method employed in this particular case was the appraisal method, AHS having caused the appraisal of the hospital to be made by an appraiser of its own selection. Mid-Island was invited by letters to "get in touch" with the assistant vice-president of AHS if there were any questions about the use of the appraisal method by the AHS review committee. Instead, Mid-Island appealed to the Commissioner of Welfare to declare that the reimbursement rate allowed by AHS was inadequate by reason of the disallowance of the full rental. Mid-Island contended, *inter alia*, that the rent for 1961 had been set in a new lease which had been signed January 1, 1961 and which required that the lessees pay Toren $350,000 per annum plus all net profits realized, directly or indirectly, from the operations of the hospital. It may be noted that the lessee was no longer Dr. Werner solely, but a limited partnership composed of Dr. Werner, one other general partner and two limited partners. This partner- ship loaned $78,000 to Toren and three of the partners owned 50% of the common and 16% of the preferred (non-voting) capital stock of Toren. The Commissioner had before him in aid of his 1963 determination voluminous statements of position by both Mid-Island and AHS, as well as extensive exhibits submitted by both parties. The exhibits showed the close relationship between the partnership of doctors and Toren and also that at the end of 1961 the fee owner of the hospital property, Cohen Realty, still owed $1,183,530 to Toren on the second mortgage. The exhibits also contained a detailed description of the method used in arriving at the reimbursement rate. Some weeks after the submissions by the parties, the Commissioner issued his 1963 determination to the effect that the reimbursement rate was found to be adequate. This deter- mination stated that it had been made after review of "the numerous data submitted." Mid-Island then brought an article 78 proceeding before the Special Term. The Special Term was of the opinion that it could not properly review the Commissioner's determination because he had made no findings and it annulled the determination and remanded the matter to the Commissioner for the purpose of making findings. It also expressed the opinion that there was no evidence establishing any affiliation between the operators of the hospital and the owner and that, absent a showing of such affiliation, the Commissioner's

determination had been unreasonable, capricious and arbitrary. We believe the Special Term erred in annulling the 1963 determination of the Commissioner. Subdivision 2 of section 254 of the Insurance Law requires that all rates of payment made by such corporations as AHS to member hospitals shall be approved as to adequacy by the Commissioner of Social Welfare, but there is no requirement for a hearing or for the making of findings of fact or conclusions of law. Neither are such findings mandated by subdivision 2 of section 257 of the Insurance Law, which provides that all final orders and decisions of the Commissioner are subject to judicial review. It is only where an administrative body or officer is acting in a quasi-judicial capacity that specific findings are required of him (*Matter of Hub Wine & Liq. Co.* v. *State Liq. Auth.*, 16 N Y 2d 112; *Matter of Barry* v. *O'Connell*, 303 N. Y. 46; *Matter of Bosco* v. *New York State Liq. Auth.*, 10 A D 2d 629, affg. 20 Misc 2d 115). When in an article 78 proceeding the petitioner questions the exercise of a discretionary power, the court may inquire only whether the record shows facts which leave no possible scope for the reasonable exercise of that discretion in the manner of which the petitioner complains (*Matter of Stracquandanio* v. *Department of Health*, 285 N. Y. 93, 96). On the record before us the Commissioner's determination, based as it was on the "numerous data" submitted to him, appears to have been well within his discretionary powers. Mid-Island appears at no point to have attacked the formula, but to have contended rather that the application was unfair because (1) it was applied "retroactively", (2) Mid-Island's lease required a certain rental and AHS had always allowed this rental and (3) the rate was eventually set on the basis of an appraisal by an appraiser selected by AHS alone. We cannot say that, under the circumstances revealed by the record, the rejection of these arguments by the Commissioner was arbitrary and capricious. The rate for 1961 could not be determined until the number of patients served in that year and the financial data for the year were finally determined, after the year had ended. The rent which the hospital pays is not binding on AHS if it is not reasonable or is paid by the hospital to an organization which would, under the definition of the formula, be an "affiliate" of the hospital. Mid-Island rejected an opportunity to demonstrate to AHS that the appraisal was too low and there is no other appraisal in the record before us. Moreover, Mid-Island had contracted to accept such reimbursement as AHS and the Commissioner determined. Not only could the Commissioner have found that the $350,000 rental plus all profits was unreasonable (which it certainly appears to be), but in our view he might also have found that there was an affiliation between the operators of the hospital and the owner. There is an affiliation within the definition of the formula between Toren and the owner, for the latter had supplied more than one third of the capital used for the purchase of the hospital. It is undenied that Toren and the partnership are most closely linked — to such an extent that one of petitioner's exhibits is a combined balance sheet of Toren and Mid-Island Hospital. Without speculating on how many intervening parties might insulate the owner of the hospital from the operators of the hospital in order to defeat any claim of affiliation, we think that affiliation exists where the operator of the hospital is linked as closely as it is here, in both finances and personnel, to its landlord, which in turn is affiliated with the owner. In view of our conclusion that the first determination of the Commissioner should have been confirmed by the Special Term, it becomes unnecessary to consider whether the Commissioner was correct when upon remand he determined that the relationship between Toren and the limited partnership constituted a violation of section 35-b of the Social Welfare Law; and we specifically refrain from expressing any opinion with respect to this now superfluous determination. The appeal from the judgment entered

September 29, 1964, which annulled the Commissioner's second determination, has become academic and accordingly it is herewith dismissed. Ughetta, Acting P. J., Christ, Hill, Rabin and Benjamin, JJ., concur.