Wtt.t.tam R. Roy, J.
This proceeding was commenced pursuant to article 78 of the CPLR by the petitioners against the respondents, seeking an order of this court directing Mayor Edward A. Hanna, in his capacity as Commissioner of Public Safety of the City of Utica, to reinstate the petitioners, Chirillo, Sardina, Arcuri, Doyle, Addison, Kahler, Aldi and Pisano, as members of the Bureau of Fire, Department of Public Safety of the City of Utica, New York, on the grounds that they were duly appointed by a former Public Safety Commissioner pursuant to section 134 of the Second Class Cities Law of the State of New York, and further that Mayor Edward A. Hanna, as Commissioner of Public Safety, be compelled to fill all vacancies currently existing within the Bureau of Fire, Department of Public Safety, and further that the Board of Estimate and Apportionment of the City of Utica be ordered to rescind their resolution of January 3, 1974, to the effect that the positions of the afore-mentioned petitioners would not be funded for the fiscal year 1974, on the grounds that said resolution was beyond the scope and authority of the Board of- Estimate and Apportionment of the City of Utica when rendered.
The facts as they apply to this proceeding are relatively simple and not really in too much dispute.
On December 21, 1973, petitioners above named, with the exception of Dominick A. Timpano, were appointed by the then Commissioner of Public Safety to the Fire Department of the City of Utica, New York, as firemen.
On January 1, 1974, the respondent, Edward A. Hanna, assumed the office of Mayor of the City of Utica, as well as assuming the duties of Commissioner of Public Safety for the City of Utica. •
*876 Pursuant to section 71 of the Second Class Cities Law of the State of New York, Mayor Edward A. Hanna, together with the Corporation Counsel, the City Engineer, the 'Comptroller, and the President of the Common Council, did constitute the Board of Estimate and Apportionment for the City of Utica.
The affidavit of the petitioners states that over a period of many years 254 positions within the Bureau of Fire, Department of Public Safety were created by the Common Council of the City of Utica, and that on December 20, 1973, 11 vacancies existed in the Bureau of Fire.
On December 21,1973, the then Commissioner of Public Safety promoted certain members of the Bureau of Fire to fill some, if not all, of the vacant positions, leaving 8 firemen positions vacant within the Bureau of Fire. On that day petitioners durillo, Sardina, Arcuri, Doyle, Addison, Kahler, Aldi and Pisano were appointed to the firemen’s positions by the then Commissioner of Public Safety, pursuant to the provisions of section 134 of the Second Class 'Cities Law, and petitioners immediately entered upon their fire training duties.
The payroll of the City of Utica, Department of Public Safety, Bureau of Fire, on December 31, 1973, included all of the petitioners and indicated that the petitioners named above received their pay pursuant to the afore-mentioned payroll.
On January 3, 1974, the Board of Estimate and Apportionment of the City of Utica passed a resolution, which is attached to the supporting papers, stating that eight positions in the Department of Public Safety, Bureau of Fire, would not be funded in the 1974 budget.
The petitioners above named, being the last firemen appointed to the Bureau of Fire, were informed by Mayor Hanna and the Fire Chief that their services as firemen were immediately terminated.
Immediately thereafter a preferred Civil Service list was established and the names of the petitioners were placed upon said list and they were informed that, as vacancies within the Bureau of Fire occurred, said vacancies would be filled first from this established preferred list.
Dominick A. Timpano is and was at all times appropriate to this proceeding president of the Utica Professional Fire Fighters Association, Local 32. It should be pointed out at the outset that Mr. Timpano does have standing in this proceeding as president of the Fire Fighters Association, but lacks any standing as a taxpayer and therefore the petition interposed by Dominick A. Timpano in his individual capacity is dismissed.
*877 It should be mentioned that prior to the election of Edward A. Hanna as Mayor of the City of Utica, he stated publicly and in particular on October 31, 1978, that he, if elected, would reduce the city payroll by more than 200 positions. This court is sympathetic with the position taken by Mr. Hanna with reference to the financial dilemma apparently existing within the City of Utica and attributes no bad faith to the actions of the Mayor in his capacity as Chairman of the Board of Estimate or Commissioner of Public Safety as far as this proceeding is concerned. For that matter, I find nothing in any of the moving papers nor recall anything said on oral argument to indicate that Edward A. Hanna was acting in anything other than good faith, having as his main concern the best interests of the City of Utica, New York. This proceeding, however, will be decided upon the law as this court believes it to be.
•Respondents preliminarily have raised two points addressed to the jurisdiction of this court to hear and decide this proceeding. They cite, first of all, the rule of the Fourth Department, Appellate Division of the New York State Supreme Court, wherein it is alleged that petitioners acted improperly by obtaining an' order to show epuse rather than through the issuance of a notice of motion together with a summons and complaint.
It is proper for an attorney to proceed by order to show cause when the matter to be considered by the court is not of a routine nature and where it is urgent that a decision be obtained well in advance of the time normally required for the determination of a plenary action. I find nothing improper in this case with the petitioners’ proceeding by order to show cause.
Subdivision (c) of CPLR 7804 contemplates the commencement of this type of a special proceeding by an order to show cause.
Respondents also contend that this special proceeding is not allowable pursuant to article 78 of the CPLR when other remedies are available. Respondents contend that petitioners had remedies available to them pursuant to the Civil Service Law of the State of New York and consequently they should be precluded from obtaining relief under this article. This court feels that an article 78 proceeding is the proper way to proceed. Particular reference is made to subdivisions 1, 2, and 3 of CPLR 7803. Respondents’ second contention, therefore, with regard to this court’s not having jurisdiction, is likewise entertained and denied.
The questions presented by this special proceeding are: (1) Does the Common Council or the Board of Estimate and Appor *878 tionment have the authority to create and/or abolish positions in the Department of Public Safety, Fire Department? (2) Must the Commissioner of Public Safety fill all vacancies within the Bureau of Fire as they occur? (3) Can the Board of Estimate and Apportionment refuse to fund positions in the Department of Public Safety duly created by the Common Council and initially approved by the Board of Estimate and Apportionment? (4) Are the petitioners above named entitled to be reinstated in the positions to which they were appointed on December 21, 1973, with full employment rights as of that date and back pay from January 3, 1974?
Various sections of the Second Class Cities Law of the State of New York, as well as a local law passed by the Common Council of the City of Utica, are applicable to the decision in this case. There seems to be little argument that .section 134 of the Second Class Cities Law, among other things, grants to the Common Council the power to determine by ordinance the number of officers and members of the Utica Fire Department.
Section 134 entitled, “ Constitution of police and fire departments ”, states as follows: “ The police and fire, department shall, as to their membership and component parts, remain as now constituted until the same shall be changed by action of the common council. The common council has power at all times by ordinance to determine the number of officers and members of each of said departments and the classes and grades into which they shall be divided, except that it shall not have the power to diminish the number of members of either of said departments as now fixed. The number of officers or members of either of said.' departments .shall not be increased without the approval of the board of estimate and apportionment. The common council may pass ordinances not inconsistent with law for the government of the police and fire departments, and regulating the powers and duties of their officers and members.. The commissioner shall appoint, as vacancies in said department occur, all officers and members thereof, and classify and apportion them into grades to conform to such ordinances.” (Emphasis added.)
There is nothing in any of the moving papers before the court to indicate the number of members of the Utica Fire Department when section 134 became law in 1906. Since we do not know the composition of the Fire Department as of that date, we can only assume that its membership has increased over the years to a point, as alleged in the supporting papers, where the Fire Department now consists of 254 positions.
*879 Although respondents make reference to the fact that there has been no showing of the cataloging of these positions, they have submitted absolutely nothing to indicate that all positions created in the Fire Department since the enactment of section 134 were done in anything other than a proper manner. As a matter of fact, respondents’ memorandum of law finds no argument with section 134 as it pertains to the power of the Common Council to determine the number of officers and members of the Police and Fire Departments.
The section also specifically states that the number of members shall not be increased without the approval of the Board of Estimate and Apportionment. Again, there is nothing in any of the papers before this court to indicate that any of the now existing 254 positions were created in any other fashion than by ordinance of the Common Council and with the approval of the Board of Estimate and Apportionment.
The last sentence of this section (Second Class Cities Law, § 134), by use of the phrase, <£iThe commissioner shall appoint, as vacancies in said department occur ”, expresses a mandatory direction by the Legislature of the State of New York to the Commissioner of Public Safety to fill all vacancies in properly established positions within the Fire Department. Respondents rely on a portion of section 180 of the Second Class Cities Law entitled, “Commissioner of public safety; appointees ”. That portion relied on states: £ £ The commissioner may appoint such other subordinates as may be prescribed by the board of estimate and apportionment to hold office, except as otherwise provided by law, during his pleasure (Emphasis added.) Section 134 provides otherwise as to members of the Fire Department.
That portion of section 130 immediately preceding the quoted portion set forth pertains to the obligation of the Commissioner of Public Safety to fill vacancies in the office of the Chief of the Fire Department and other high ranking deputies and other officers within the Department of Public Safety. The quoted portion pertains to the commissioner’s permissive right to appoint subordinates as may be prescribed by the Board of Estimate and Apportionment.
It should be pointed out at this time that the respondents seek to draw an analogy between the Departments of Fire and Departments of Police as referred to in section 9-25 of the Code of the City of Utica. Pursuant to the terms of that section, a roster of the Police Bureau’s composition was established. No comparable roster for the Department of Fire was ever created. It is stated in subsection (b) of section 9-25 pertaining to the *880 composition of the Utica Police Department: “ The Commissioner of Public Safety shall continue to be authorized to assign such personnel, in such numbers and of such ranks as he deems necessary, to such divisions and assignments within the Bureau of Police as may be created, all in accordance with law.” Respondents urge that this language substantiates their position as to the right of the Commissioner of Public Safety to exercise his discretion in filling the lower ranks as he deems necessary. I cannot agree with that contention.
Subsection (a) in section 9-35 sets forth a composition of the Bureau of Police, indicating the rank and the number of personnel authorized for each position. Subsection (b) merely states that the Commissioner of Public Safety shall be authorized to assign such personnel to such divisions and assignments within the Bureau of Police as may be created, all in accordance with law. (Emphasis added.)
Respondents also in their brief refer to section 74 of the Second Class Cities Law entitled, “Determination of positions and salaries ”. The appropriate portions of that section are as follows: “ The board of estimate and apportionment, except as otherwise provided by law, shall have authority to fix the salaries or compensation, and determine the positions and numbers of all city officers and employees, of each office, board and department ”. (Emphasis added.)
This section was modified by Local Law No. 7, enacted during the year 19:67 by the iCommon Council of the City of Utica, to be effective January 1, 1968. The important parts of that local law pertaining to salaries, wages or compensation to be paid to members of the Department of Public Safety are as follows:
“ Section 1. * * * The salaries, wages or compensations which members of the department of public safety shall receive annually * * * from and after January first nineteen hundred sixty-eight * * * and shall be included in future annual estimates submitted to the common council by the board of estimate and apportionment ”. (Emphasis added.)
“ Section 2. * * * The common council shall have the power to increase such salaries, wages or compensations * * * and the common council may create new positions in the department of public safety only upon the recommendation of the commissioner of public safety with the approval of the board of estimate and apportionment insofar as salary, wage or compensation for such new position is concerned.”
It is clear that, by the terms of this local law, the Common Council of the City of Utica determined the annual salary for *881 the members of the Department of Public Safety and directed that all future annual estimates submitted to the Common Council by the Board of Estimate and Apportionment shall include enunciated salaries unless raised by the Common Council pursuant to the terms of section 2.
Section 2 specifically grants to the Common Council the right to create new positions in the Department of Public Safety conditioned upon the recommendation of the Commissioner of Public Safety and the approval of the Board of Estimate and Apportionment insofar as compensation for such new positions is concerned.
The general rule, when not qualified or restricted by positive law, is that the power which creates an office may abolish it in its discretion, and this rule is applicable to municipal offices created by act of the municipality. (Matter of Collins v. City of Schenectady, 256 App. Div. 389.) Thus, a municipal corporation may, unless restricted by its charter or other statute, abolish an office created by ordinance. (Matter of Collins v. City of Schenectady, supra.) However, an office created by an ordinance cannot legally be abolished by a resolution fixing an annual budget, since the adoption of the budget by the city can neither create nor abolish positions. (Matter of Collins v. City of Schenectady, supra; see, also, Anker v. Dibble, 236 App. Div. 613.)
Respondents contend that the eight positions involved in this proceeding, none of which involves a rank of authority, do not involve the abolition of the positions, but a matter of funding the positions, which is a proper function of the Board of Estimate and Apportionment as permitted by section 130 of the Second Class Cities ‘Law. Local Law No. 7 mandates that the eight positions in question be funded annually. This was not done.
As stated earlier in this decision, section 134 of the Second Class Cities Law gives to the Common Council the exclusive right to create the positions in the Department of Fire. That same section specifically directs the Commissioner of Public Safety to fill those positions as they arise.
Petitioners’ office, having been created by an ordinance, could not legally be abolished by a mere resolution for failing to appropriate sufficient funds for compensation to the petitioners during the year 1974.
In view of the above, this court finds as follows: (1) The power to create and/or abolish positions in the Department of Public Safety, Fire Department, rests with the Common Council ; (2) When a vacancy in the Department of Public Safety, *882 Fire Department occurs, the Commissioner of Public Safety must fill the vacancy; (3) The Board of Estimate and Apportionment must fund all duly created positions in the Department of Public Safety, Fire Department, and (4) Petitioners, Chirillo, Sardina, Arcuri, Doyle, Addison, Kahler, Aldi and Pisano are reinstated to the position of fireman, with all employment rights and benefits commencing December 21, 1973. The petitioners are awarded back pay from January 3,1974, to the date of their reinstatement, less any amounts of money earned by them during the afore-mentioned period.