In the Matter of RAYMOND F. GALLAGHER et al., as Erie County Legislators and Citizen Taxpayers, Plaintiffs, v EDWARD V. REGAN, as Chief Executive and Budget Officer of the County of Erie, et al., Defendants.

Fourth Department, December 29, 1976

*Timothy A. McCarthy* and *Alvin M. Glick* for plaintiffs.

*James L. Magavern* for defendants.

DILLON, J. This controversy has been submitted upon an agreed statement of facts pursuant to CPLR 3222. Several issues are presented which will be resolved separately.

The Erie County Executive submitted to the Erie County Legislature, in a timely manner, a tentative budget pursuant to section 1802 of the Erie County Charter (Local Laws, 1959, No. 1 of County of Erie as amd). The Legislature acted thereon and in accordance with subdivision B of section 1803 of the charter, presented the document to the Clerk of the Legislature for presentation to the County Executive. It is interesting to note here that the Legislature, which had met regularly on Thursdays in 1975 by designation of the Chairman of the Legislature, met and acted on the County Executive's tentative budget on the last Tuesday in November, apparently for the purpose of complying with the mandate of subdivision B of section 1803 of the charter requiring that the Clerk of the Legislature present the budget as passed by the

Legislature to the County Executive not later than "the Wednesday following the last Tuesday in November".

On Monday, December 6, 1976, the County Executive, disapproving certain items in the budget as submitted by the Legislature, returned it, together with a statement of his objections, to the Clerk of the Legislature who, pursuant to subdivision C of section 1803 of the charter, was required to "present the same to the county legislature at its next stated meeting." The County Executive was required by law to return the tentative budget and his objections to the Clerk of the Legislature on or before the Monday preceding the first Tuesday in December. Had he failed to do so, the tentative budget as passed by the Legislature would have been "deemed adopted" (Erie County Charter, § 1803, subd C).

Thereafter the Legislature did not convene until Thursday, December 9, 1976, at which time it voted by two thirds of its members to override certain objections of the County Executive, and it failed to achieve such a majority with respect to others. The County Executive has refused to recognize the action of the Legislature on December 9, upon the ground that the Legislature failed to act upon the budget and his objections on or before the first Tuesday in December and that thus the tentative budget as resubmitted by him to the Legislature is "deemed adopted" (Erie County Charter, § 1803, subd E). The Legislature argues that its vote upon the objections of the County Executive was timely in that it occurred "at its next stated meeting" as provided for in subdivision C of section 1803 of the charter.

In prior years, regular sessions of the Legislature were held on the first Tuesday of each month. On December 16, 1975 the Legislature amended its rules to provide that meeting dates could be designated by the Chairman of the Legislature. All Legislative meetings were held on Thursdays in 1976 except for the aforesaid meeting held on the last Tuesday in November.

Article XVIII of the charter relates to "FINANCIAL PROCEDURES". Subdivision E of section 1803 thereof is determinative of this issue.

"Section 1803. Adoption of Budget. * * * E. If a budget has not been adopted, as herein provided, on or before the first Tuesday of December in each year, then the tentative budget as submitted by the county executive, plus all additions or

increases to which he has failed to object, shall be the budget for the ensuing fiscal year."

The Legislature failed to meet and act upon the County Executive's objections on or before the first Tuesday in December and thus the tentative budget, to the extent as it is more particularly described herein *(infra)*, became the budget for fiscal year 1977. The legislative proceedings of December 9, 1976, insofar as they relate to this issue, are a nullity. This conclusion, however, does not resolve all of the controversy.

The County Executive's original tentative budget for fiscal year 1977 was submitted on July 19, 1976. On November 10 the County Executive submitted to the Legislature an amended tentative budget. The latter document is characterized by the parties as "unofficial", a term which appears to be without basis in either article XVIII of the charter or article 18 of the Erie County Administrative Code (Local Laws, 1960, No. 1 of County of Erie, as amd) which is also entitled "FINANCIAL PROCEDURES". It appears that such characterization is placed upon the amended tentative budget because the County Executive sought permission of the Legislature to submit that document on the basis, according to his letter of November 1, 1976 to the Legislature, that the earlier tentative budget "should be modified substantially". On November 10, 1976 the County Executive noted in his letter of transmittal of the amended tentative budget to the Legislature, that in the intervening months since the submission of the original tentative budget on July 19, 1976, "events have occurred which require substantial amendments to that budget."

The County Executive is mandated to submit a tentative budget on or before the 10th of November of each year (Erie County Charter, § 1802). He is not required either by the charter or the Administrative Code to procure the approval of the Legislature before its submission, nor is there any authority for the County Legislature to refuse to accept such tentative budget. When it became apparent to the County Executive that the tentative budget was unrealistic because of subsequent events, the County Executive had the duty as the chief budget officer of the county (Erie County Charter, § 302, subd d) to submit realistic budget projections to the County Legislature and, provided he did so on or before the 10th of November, as he did here, those amended tentative budget estimates became part of the tentative budget to be reviewed by the County Legislature in accordance with the provisions of

article XVIII of the charter. As the County Executive properly noted in his November 1, 1976 communication to the Legislature, "submission of a revised tentative budget * * * in no way impair[s] your powers to make further cuts or additions to the extent you see fit. However, it * * * enable[s] you to base your deliberations and actions upon the best information now available".

To focus this aspect of the controversy, it is necessary to set out the four items of revenue in dispute.

|  |  | Tentative Budget July 19, 1976 | Amended Tentative Budget— November 10, 1976 |
|---|---|---|---|
| (1) | Non-Property Taxes Code 1150.00, Off-Track Pari-Mutuel Tax | $ 950,000 | $ 1,400,000 |
| (2) | State and Federal Aid, Code 4001.00, Federal Revenue Sharing | 10,000,000 | 10,950,000 |
| (3) | State and Federal Aid, Federal Anti-Recession Fiscal Aid Program | 0 | 2,700,000 |
| (4) | Dept. 3110.00 Sheriff, Code 2229.00, Other General Services— Other Governments | 0 | 228,984 |

In its action of Tuesday, November 30, 1976, the Legislature adopted the estimates of the November 10 amended tentative budget on items (2), (3) and (4), and increased the budgetary estimate on item (1) to $1,900,000. Thus, except for the increase of $500,000 on item (1), the County Legislature accepted and adopted without change the County Executive's budgetary estimates of revenue. Interestingly, while the County Executive now argues that the Legislature was without power to adopt his November 10 budgetary estimates, he does not argue that they are inaccurate estimates of actual anticipated revenue. Indeed, in his message of objections to the Legislature dated December 6, 1976, he notes that "there may be little question as to the probability of these revenue items as such" and he states that the additional revenue to be derived over and above his July 19 budget estimates will be used to respond to other "legal obligations" and "will obviate, in part, the 1976 deficit".

Since the power of the County Executive is limited to consideration of additions or increases in the tentative budget

by the Legislature (Erie County Charter, § 1803, subd B), to the extent that the County Legislature accepted and adopted his revenue estimates, he was powerless to object.

The County Executive should not now be heard to object to legislative estimates of revenue premised precisely upon his facts and figures, and subsequently acknowledged by him to be realistic. To insist, as the County Executive now does, that admittedly underestimated revenue figures be perpetuated in the budget will not only result in an imbalanced budget, but runs directly contrary to his obligation under subdivisions a and c of section 18.04 of the Administrative Code, as is hereinafter more particularly addressed.

Additionally, in announcing that he intends to use the excess revenues to pay other county obligations, he improperly deprives the Legislature of any meaningful opportunity to review appropriations (Erie County Charter, § 1803). If it was his intention to exclude legislative attack upon appropriations "required by law or for debt service" (Erie County Charter, § 1803, subd A), it was his obligation accurately to state estimated revenues and then particularly to identify such appropriations.

For all of the foregoing reasons, the County Executive's objection or "veto" message of December 6, 1976, as it relates to items (2), (3) and (4) above, in the circumstances here, is without basis in law and is void. Similarly, to the extent that his objection relates to the sum of $1,400,000 in item (1) above, it is also void. The action of the Legislature, however, in increasing the estimated revenue on item (1) by the sum of $500,000 requires special consideration.

Implicit in the brief of respondent on this submission is an acknowledgment that the Legislature has the power to increase revenue estimates set forth in the County Executive's tentative budget. He argues that such legislative additions to budgetary items of revenue are subject to executive veto. Only briefly does he urge in the alternative that if he does not have such veto power, then the Legislature's power to review the tentative budget under section 1803 of the charter is limited to increases or decreases in "items of appropriation" and does not extend to items of revenue.

Here, however, the County Executive's objection, to the extent that it applies to the increase of $500,000 in item (1) aforesaid, effectively removes that sum from the budget for fiscal year 1977. It must be deleted either because the Legisla-

ture was without authority so to increase the Executive's tentative budget or, in the alternative, because the effort of the Legislature to override his objection was void.

Petitioners also challenge the validity of the objection by the County Executive to certain items of revenue, totaling $621,300, contained in the tentative budget approved by the Legislature. The items objected to consisted of estimated revenue to be derived from public health fees; parks and recreation charges; and golf charges. Each of the items in controversy was included in either the original tentative budget, or the amended tentative budget, or both, and except for increasing revenue from public health fees by $75,000, the Legislature adopted the Executive's recommendations. That legislative increase of $75,000 may not be included in the adopted budget for fiscal year 1977 in any event, for the same reasons and upon the same rationale hereinbefore applied to the legislative increase of $500,000 in revenue estimates of off-track pari-mutuel tax.

On a broader scale, however, and within the framework of the facts stipulated by the parties, the County Executive's action in objecting to and eliminating these three items of revenue was valid. The County Executive's action was authorized not by the veto power provisions of subdivision E of section 1803 of the charter but, instead, by the power vested in the County Executive by the Administrative Code to estimate revenues (Erie County Administartive Code, § 18.04, subd c). In his letter of December 6, 1976 to the Legislature the County Executive objected to the three tiems of revenue in question on the ground that the Legislature had eliminated the staff positions which generated the revenues reflected in those items. The County Executive thus was not acting upon added or increased items of revenue but, rather, was revising the revenue estimates to reflect his assertion that the Legislature had eliminated the sources of the revenue.

The Administrative Code empowers the County Executive to prepare estimates of revenue (Erie County Administrative Code, § 18.04, subd c). As previously indicated, implicit in that power is the duty of the County Executive to revise the estimates of revenue to reflect economic realities facing the county. Since the County Executive is required to "show the sources of income" (Erie County Administrative Code, § 18.04, subd c), there is an analogous duty upon him to indicate the reasons for any revision made in the estimates of revenue.

Here the County Executive rejected not only the Legislature's revenue estimates but also his own, upon the assertion that the revenue would not be forthcoming. His action is valid absent a demonstration that his revisions were arbitrary or capricious. The court's inquiry in this regard is limited to "whether the record shows facts which leave no possible scope for the reasonable exercise of discretion" *(Matter of Tomanio v Board of Regents,* 43 AD2d 643, 644; *Matter of Mid-Island Hosp. v Wyman,* 25 AD2d 765), and the burden falls to the petitioners to show that this action was arbitrary or capricious. The stipulated facts fail to demonstrate any support for such a contention. The County Executive, therefore, was authorized to eliminate the three items of revenue in question, and they should not be included in the budget for fiscal year 1977.

Another issue raised in this proceeding is whether the Legislature is empowered to make lump-sum reductions in expenditures as opposed to reducing the sum appropriated on a specific budgetary line. It is clear that the Legislature is authorized to take the latter action.

Initially we consider the Legislature's 2.2 million-dollar reduction in salary and wage accounts which is based upon anticipated employee turnover. Although the County Executive's tentative budget, as amended, reduces the salary and wage accounts by $675,000 without reference to line items, and deems this entry to be "a general county reduction due to employee turnover", he nevertheless contends that the failure of the Legislature to apply its 2.2 million-dollar employee turnover reduction figure to specific budgetary lines constitutes an abdication of its responsibility in contravention of the charter and the Administrative Code. Should the position of the County Executive be correct, the same considerations would apply equally to his earlier action whereby the salary and wage accounts were generally reduced, also without reference to specific budgetary lines (see Erie County Administrative Code, § 18.05, subd b).

Once a budget is adopted, the Legislature is required to levy a real property tax, the amount of which is determined by the difference between anticipated revenues and appropriations (Erie County Charter, § 1804). Thus the charter is designed to insure a balanced budget. Assuming the accuracy of other budgetary components, the failure to reduce appropriations to account for employee turnover would necessarily result in a

budgetary surplus. Since the amount of the tax levy is dependent upon the integrity and reliability of the figures designated as appropriations and revenues, the knowing and willful omission of factors which would realistically affect those figures would be contrary to the requirement that the budget be balanced.

It is undisputed by the parties and accepted by this court that the amount of appropriations will be lessened by virtue of employee turnover. Consequently, that factor should be considered within the budgetary calculations, assuming that it can be inserted in conformity with applicable charter and Administrative Code provisions.

The fact that the County Executive submitted a lump-sum figure for employee turnover is indicative that this reduction may not realistically be itemized on a line basis. In fact, to do so would require speculative judgments as to the particular positions which would become vacant during the year as well as the date upon which the vacancy would occur. Thus, although the relevant charter and code provisions are viewed as requiring a line item budget, they may not be read as barring lump-sum action where, as here, it is demonstrably impracticable to do otherwise (see *People v Tremaine,* 281 NY 1, 7).

In determining whether present practice complies with the provisions of the charter and Administrative Code (see *People v Tremaine, supra,* p 11), we do not rely upon the fact that previous Erie County budgets have reflected general reductions in personnel costs attributable to employee turnover. This historical practice, however, does lend weight to the conclusion that the employee turnover reduction figure is not reasonably capable of incorporation within the county budget in a line item fashion.

Accordingly, the legislative reduction of the appropriations for personnel due to employee turnover represents a proper exercise of legislative action and is not subject to objection by the County Executive (Erie County Charter, art XVIII). Thus the legislative assessment of employee turnover must be given effect in the budget for the 1977 fiscal year.

A comparable rationale, however, will not validate the legislative reduction of the appropriations for the accounts designated for mental health programs; or equipment, materials and supplies, and expenses.

In reducing the mental health appropriations by $486,000,

the Legislature has departed from the requirements of an itemized budget without persuasive justification for its action. Though the funding complexities of the mental health programs make it difficult to predict the budgetary consequences of the elimination or reduction of a particular appropriation, the programs are listed individually as line items in the tentative budget and the Legislature should have responded in kind. The legislative resolution fails to identify either the programs which should receive reduced appropriations or the amount of such reductions. Additionally, the reduction is to be accomplished by "economies in operation" without mention of the nature and scope of such economies. While the legislative resolution concerning this question provides that if the economies are not realized the Legislature may then make line item reductions, such a procedure contravenes its statutory duty to make a determination upon consideration of the tentative budget.

The $1,240,000 legislative reduction of equipment, materials and supplies, and expense accounts is likewise invalid. This measure indiscriminately affects all county expenditures, except personnel costs, in every unit of county government. The Legislature has attempted to reduce the total appropriation and substitute a lump sum for these expenses in place of the itemizations contained in the budget. Such action is plainly unauthorized (Erie County Charter, § 1803) and the objection of the County Executive is valid.

Accordingly, the legislative reduction of the appropriations for the accounts designated for mental health programs and for equipment, materials and supplies, and expenses may not be reflected in the budget for fiscal year 1977.

We next address the issue regarding the power of the Legislature to eliminate the positions of Deputy County Executive, Deputy Commissioner of Public Works-Buildings and Grounds, Deputy Director of Purchasing, Deputy Commissioner-Recreation, County Forester and Commissioner of Environmental Quality. Each of these positions is authorized by the Administrative Code, except that of Deputy County Executive which is authorized by the charter. Although the County Executive's tentative budget failed to contain items of appropriation for the latter three positions, his December 6, 1976 message to the Legislature states that he considers the legislative abolition of each of these six positions as lacking force and effect.

The County Executive contends that the Legislature may not eliminate positions which are created by the county charter or the Administartive Code by striking or failing to make appropriations for their salaries. It is claimed that since these positions were created by local law, they may not be abolished by any procedure of lesser formality. In support of this argument he relies upon *Matter of Collins v City of Schenectady* (256 App Div 389) and *Timpano v Hanna* (77 Misc 2d 874, affd without opn 44 AD2d 912). Each of these cases held that an office created by ordinance could not be abolished by a resolution fixing an annual budget *(contra, People ex rel. Kenehan v Higgins,* 159 App Div 226). Both cases, however, involved cities and were based upon a finding that neither city had the statutory authority to abolish the offices except by ordinance. Significantly, the *Collins* court noted that "[a] municipal corporation may, unless restrained by its charter or other statute, abolish an office created by statute" *(Matter of Collins v City of Schenectady, supra,* pp 390-391).

Here, no such restraint is found in either the charter or Administartive Code. Moreover, statutory authority for the Legislature to abolish positions by adoption of a budget is presented in section 204 of the County Law which provides in part that "[the Legislature] shall have power to establish positions of employment and may abolish the same. The establishment and abolition of such positions may be by local law, by resolution or by the adoption of a budget." While this statute may be construed as requiring that positions created by a certain procedure only be abolished in the same manner, to do so here would conflict with subdivision d of section 3.02 of the Administrative Code which provides that the County Executive's power of appointment is restricted "within the appropriations provided therefor". We note that a vast number of positions in county government are authorized by the Administrative Code and the power of appointment thereto is similarly circumscribed by the same language (see, e.g., Erie County Administrative Code, §§ 5.03; 6.03; 11.04; 11-B-02; 12.03; 13.03; 15.03 [Local Laws, 1960, No. 1, as amd by Local Laws, 1967, No. 5]). Thus adoption of the County Executive's view would have broad ramifications. That aside, the conclusion is inescapable that the positions in controversy shall exist only so long as the Legislature provides appropriations there-

for. It follows that they have been validly abolished by the Legislature (see *Matter of Blyn v Bartlett,* 50 AD2d 442, affd 39 NY2d 349). Additionally, since the legislative action constituted a decrease in appropriations, it is not subject to objection by the County Executive. The positions should not be included in the budget for fiscal year 1977.

A related question involves the power of the Legislature to create the position of Commissioner of Environment and Development at the rate of $1 per year. While such action was valid, so too was the action of the County Executive in objecting to its creation and the appropriation. It constituted an addition to the budget and was thus subject to objection by the County Executive. While it may be that the parties intend that there be a position in county government in the area of environmental concern, by their respective actions they have effectively eliminated that position. The dilemma which well may have been thus created may be easily resolved, however, by proper legislative and executive action.

Finally, the parties are in dispute regarding legislative additions to the tentative budget in appropriations for positions in Family Court. Although the County Executive objected to these appropriations, the Legislature contends that the override vote of its December 9, 1976 meeting effectively restored them. As previously discussed, however, this meeting was ineffectual and thus the objection of the County Executive must stand. Such additions shall not be included in the budget for fiscal year 1977. It should be noted, however, that this record presents no alternate ground upon which to conclude that these positions are otherwise required to be maintained in the county budget.

Judgment should be entered directing the County Executive and the Clerk of the County Legislature to certify the 1977 Erie County Budget in accordance with this opinion.

CARDAMONE, J. P., SIMONS, GOLDMAN and WITMER, JJ., concur.

Judgment unanimously entered, without costs in accordance with opinion by DILLON, J.