MARTIN R. KOENIG, as President of the Civil Service Employees Association, Inc., Monroe Chapter, et al., Respondents, v LUCIEN A. MORIN, as County Manager of the County of Monroe, et al., Appellants.

Fourth Department, February 25, 1977

*Harris, Beach & Wilcox (Carl R. Krause* and *James A. Spitz, Jr.,* of counsel), for appellants.

*Roemer & Featherstonhaugh (Stephen Wiley* of counsel), for respondents.

CARDAMONE, J. May a county lawfully furlough its employees without pay for a limited period is the question we are asked to decide. We believe that it may.

Monroe County, squeezed by a financial crunch because of an anticipated substantial budget deficit at year-end 1976, enacted Resolution No. 210 on June 30, 1976 which provided that every county employee regardless of civil service, union or departmental status would be furloughed without pay for 10 days in 1976. Upon application of the plaintiff-respondent, Monroe County CSEA, Special Term declared that the resolution violates sections 80 and 81 of the Civil Service Law and the lay-off provisions of the collective bargaining agreement between the parties and that defendant-appellants, Monroe County Manager and the Monroe County Legislature, had no authority under section 305 of the Monroe County Charter to enact the resolution. Special Term, thereupon, granted CSEA's motion for summary judgment, declared Resolution No. 210 unlawful and void and enjoined Monroe County from taking any steps to implement the 10-day furlough plan for county employees.

As a political subdivision of the State, Monroe County exercises those powers delegated to it by the New York Constitution, the Municipal Home Rule Law and the County Law. Section 2 (subd [c], par [1]) of article IX of the State Constitution states that: "[E]very local government shall have power to adopt and amend local laws not inconsistent with the provisions of this constitution or any general law relating to its property, affairs or government". Every county in New York is further granted the power to adopt and amend local laws relating to its employees as follows: "The powers, duties, qualifications, number, mode of selection and removal, terms of office, compensation, hours of work, protection, welfare and safety of its officers and employees, except that cities and towns shall not have such power with respect to members of the legislative body of the county in their capacities as county officers". By placing these constitutional grants of power practically verbatim into section 10 of the Municipal Home Rule Law (§ 10, subd 1, par [i]; subd 1, par [ii], cl a, subcl [1]), the State Legislature underlined its intent that these grants

of municipal powers are to be liberally construed (Municipal Home Rule Law, § 51).

The other source of relevant power is found in the County Law which empowers the County Legislature to fix the compensation of all employees (§ 205); to fix the number of hours constituting a legal day's work for county employees (§ 206); and to fix and regulate the granting with or without pay of vacations, sick leaves and leaves of absence to county employees (§ 207). This statute is also required to be liberally construed (County Law, § 1000, subd 1).

The county possesses, therefore, broad powers over all matters relating to its affairs and all powers reasonably incident to those granted it by statute *(Whittaker v Village of Franklinville,* 265 NY 11). Implicit in its status as a public employer (Civil Service Law, § 200) is the county's right to control the employment relationship between it and its employees *(City of Amsterdam v Helsby,* 37 NY2d 19, 26; *Matter of Reese v Lombard,* 47 AD2d 327).

In the constitutional and statutory grants of power (except for section 207 of the County Law) just enumerated the county's powers are made expressly subject *only* to the proviso that they not be inconsistent with any general law (i.e., Municipal Home Rule Law, § 10, subd 1, pars [i], [ii]; County Law, § 206) and not be inconsistent with the Civil Service Law (i.e., County Law, § 205). Since, as noted, the powers granted Monroe County over its employment relationship are broad and must be liberally construed, we believe that any inconsistency with a general law must be specifically demonstrated by the party challenging the county's power to take a certain action. In the instant case the furlough program contained in Resolution No. 210 relates directly to the County of Monroe's affairs as an employer, as the provider of services to the general public and as the trustee of public moneys.

The furlough of county employees proposed by Resolution No. 210 does not conflict with the fundamental purposes underlying the New York State Civil Service Law which was enacted to insure that the best qualified individuals would be selected for employment in the public sector. Section 80 of the Civil Service Law which deals with suspension or demotion upon the abolition or reduction of positions provides that: "Where, because of economy, consolidation or abolition of functions, curtailment of activities or otherwise, positions in the competitive class are abolished or reduced in rank or

salary grade, suspension or demotion, as the case may be, among incumbents holding the same or similar positions shall be made in the inverse order of original appointment on a permanent basis in the classified service in the service of the governmental jurisdiction in which such abolition or reduction of positions occurs". Section 81 of the same statute provides that those employees suspended or demoted or whose job is abolished under section 80 must be placed on a preferred list, certified and granted a priority in reinstatement in the particular county office in which there is a vacancy. Thus section 80 contains no grant of power for abolishing positions. That authority, as we noted before, is an inherent general power possessed by the county under constitutional and statutory grant. Rather, section 80 merely outlines the procedure to be followed for the termination of employees when positions are abolished. It, therefore, follows that the furlough plan promulgated in Resolution No. 210 which does not contemplate abolishing any county positions is not subject to, nor in conflict with, sections 80 and 81 of the Civil Service Law.

Section 304 of the Monroe County Charter (Local Laws, 1965, No. 2 of County of Monroe) embodies a delegation of power from the County Legislature to the County Manager with respect to laying off, suspending, or removing county employees. This section states that: "Any officer or employee of the county appointed by the county manager, or upon his authorization, may be laid off, suspended or removed from office or employment by the county manager or by the officer by whom appointed." Section 305 of the Monroe County Charter reads as follows: "Neither the county legislature nor any of its committees or members shall direct or request the appointment of any person to or his removal from, an office or position by the county manager or any of the officials under his jurisdiction, or in any manner take part in the appointment or removal of officers or employees in the administrative service of the county who are subject to the jurisdiction of the county manager". The plain purpose of section 305 is to prevent the institution of a political patronage system and the section may not be interpreted as a limitation on the County Legislature's power to control the number of employees on the county payroll. Although a directive by the Legislature to the County Manager to remove or appoint selected persons clearly would be proscribed under this section, a resolution which directs the indiscriminate furlough of all county employees

would not be. We conclude, therefore, that these sections of the Monroe County Charter do not serve to bar the Legislature's plan.

Special Term incorrectly held that the resolution violates the collective bargaining agreement between Monroe County and the CSEA. Indeed, there is no allegation in the CSEA's complaint of any contract violation. Moreover, the furlough plan had not been implemented or, so far as the record before us reveals, even developed. In that connection, we note that the resolution by its terms applies only to 1976. Appellant county has taken no action other than passing Resolution No. 210. Thus, it is not now possible to determine whether a furlough plan when and if re-enacted and implemented will, in fact, violate the agreement. Such a determination must await future events.

We recognize that the appellant county faced with spiraling costs and ever-increasing demands on its tax bases must have sufficient latitude and flexibility under the law to manage its affairs efficiently and effectively (*Matter of Young v Board of Educ. of Cent. School Dist. No. 6, Town of Huntington,* 35 NY2d 31, 34). The county has the authority to abolish positions and later re-establish them, if it so desires. Concededly, it may suspend its employees for economic reasons (see 15A Am Jur 2d, Civil Service, §§ 55, 72; 4 McQuillin, Municipal Corporations [3d ed], §§ 12.246, 12.253e). As a corollary the county possesses the power to furlough its employees (*Professional Staff Congress of CUNY v Board of Higher Educ. of City of N. Y.,* NYLJ, Jan. 29, 1976, p 38, col 4). Further, the furlough plan may be more economical, less destructive of county services and perhaps more equitable because its impact is spread over the entire body of county public employees rather than causing hardship to a few. Regardless of whether such is the fact, however, we conclude that respondent CSEA has failed to demonstrate that Resolution No. 210 is inconsistent with any general law, the Civil Service Law or the Monroe County Charter.

The judgment should be reversed and Resolution No. 210 should be declared to be valid and lawful.

MOULE, SIMONS and GOLDMAN, JJ., concur; MARSH, P. J., not participating.

Judgment reversed, on the law, without costs, and judgment

entered in favor of defendants declaring resolution valid and lawful.