Frank R Bayger, J.
The above-entitled proceedings were brought pursuant to CPLR article 78 to contest the respondents’ withholding of salary increases allegedly due these petitioners for the years 1976 and/or 1977. All of the petitioners are nonunion, Erie County "white collar” employees of exempt civil service classification (Civil Service Law, § 41). They hold various graded, nonjudicial positions within the county’s court structure. By these actions they seek to compel the county’s payment of 8% or $800 salary increases as originally proposed by a July 29, 1975 resolution of the respondent Legislature. That resolution was adopted in connection with the Legislature’s earlier approval of a new collective bargaining agreement with the Civil Service Employees Association, the recognized bargaining unit for the county’s white collar employees. Unlike the majority of such employees whose right to unionize and collectively bargain is guaranteed by statute (Civil Service Law, § 202), these petitioners are said to be prohibited from doing so by reason of their "managerial” or "confidential” employment classification (Civil Service Law, § 201, subd 7, par [a]; § 214). In fairness to such employees, therefore, and in keeping with the county’s established tradition, the Legislature adopted resolution No. 437 to the effect that all nonunion employees would be granted 1976 and 1977 salary increases and other employment benefits equivalent to those afforded union employees under the new collective bargaining agreement.
The proposed 1976 salary adjustments were thereafter funded by that year’s budget and, except for some higher salaried employees, salary increases were given to most county employees in accordance with the July 29, 1975 resolutions. The principal exceptions were some employees whose *766 1975 salaries exceeded $20,000, the respondents having subsequently determined to freeze all salaries in those pay grades in an effort to ease the county’s financial strain. In spite of that determination, however, 1976 salary increases were in fact received by many such employees, but not by petitioners Scime, Engler and Boecio. It should be noted that the withholding of their respective salary adjustments represented nothing more than an admittedly inconsistent economizing and was not intended to reflect any doubt as to their unquestioned merit and abilities.
Thereafter and throughout 1976 the county continued to experience serious financial difficulties. The need for substantial tax increases and meaningful reductions in 1977 appropriations became obvious (cf. Matter of Gallagher v Regan, 55 AD2d 284). Respondents therefore determined to withhold 1977 salary increases from all nonunion personnel and a resolution to that effect was adopted by the Legislature and made part of the county’s 1977 budget on November 30, 1976. That determination notwithstanding, 1977 salary increases were afforded a substantial number of nonunion employees, but not the petitioners herein. No attempt has been made to correct this inequity, or to recover any funds allegedly expended in contravention of the November 30, 1976 resolution and the current county budget. The withholding of increases from these petitioners and others was again without reference to their merit or ability and was founded solely upon their status as nonunion employees.
Petitioners contend that the withholding of their salary increases was discriminatory, arbitrary and capricious and violated their right to the equal protection of the law (US Const, 14th Amdt; NY Const, art I, § 11). The respondents claim that petitioners are without any contractual or constitutional right to the relief requested and that the withholding of these salary increases was a proper exercise of the Legislature’s right to determine the compensation of county employees (County Law, § 205; Erie County Charter, § 202, subd f [Local Laws, 1959, No. 1 of Erie County, § 202, subd f]). The respondents also suggest that to the extent raises may have been mistakenly granted some nonunion employees, those increases were appropriated and paid by reason of administrative error and did not represent an intentional, unlawful discrimination between similary situated employees.
The county’s financial plight cannot be denied. As in the *767 case of every household, spiraling costs and ever increasing demands on available income have made fiscal restraint and efficient management an absolute necessity. In answer to that need the respondents have heretofore made every effort to reduce county appropriations to a fiscally responsible level (see Matter of Gallagher v Regan, supra). It is their continuing responsibility to eliminate unnecessary expenditures, maintain a balanced budget and otherwise accomplish fiscal stability. But they must do so in a lawful manner.
There is no doubt that under proper circumstances, a local government may lawfully withhold, suspend, or defer wage increases, or abolish positions, or temporarily furlough or suspend employees, or otherwise act in a nondiscriminatory manner to reduce expenditures in a time of fiscal crisis (Koenig v Morin, 56 AD2d 254; Committee of Interns and Residents v City of New York, 87 Misc 2d 504). It is similarly true, as the respondents contend, that the July 29, 1975 resolution number 437 created no contractual or otherwise vested rights in the county’s nonunion employees. Subject to applicable statutory and constitutional considerations, the Legislature was fully authorized to reconsider, modify, amend or revoke that resolution at any time (Matter of Baczensky v Hose, 44 Misc 2d 89). The issue to be decided herein is whether the respondents’ denial of salary increases for these petitioners falls within those rules.
Erie County has heretofore duly adopted a graded salary plan based upon county job descriptions and specifications (County Law, § 205; Civil Service Law, § 20). Such plans exist throughout the civil service of this State and elsewhere and are designed to benefit both the public employer and its employees. Among other things, it guarantees the employees a proper equality of compensation for work of equal description and responsibility. Salary grades are classified or determined according to the character or description of the work to be performed and the rate of compensation that is to be paid therefor (Matter of Corrigan v Joseph, 304 NY 172). They are not based upon, nor do they otherwise relate to a position’s civil service jurisdictional classification, nor an incumbent’s "managerial” or "confidential” employment status. A particular salary grade may properly encompass positions of differing civil service classification and employees of both union and nonunion eligibility. The only factors or circumstances that must be common to all employees within any particular salary *768 grade are a similarity in the character and scope of their duties and an equality of compensation (Leitner v Conway, 195 Misc 621; Matter of Benedetto v County of Suffolk, 61 Misc 2d 312, revd on other grounds 35 AD2d 568). This equitable principle of "equal pay for equal work” is deeply rooted in the public policy of this State and its municipalities and is reflected in section 115 of the Civil Service Law (L 1958, ch 790). The actions complained of herein are clearly inequitable and obviously contrary to this long-established policy, but they may not be held violative of section 115 as the mandate of that statute is said to be limited to State employees (Ryan v Adler, 51 Misc 2d 816, affd 28 AD2d 920, affd 21 NY2d 815). While this restrictive interpretation has been severely criticized (cf. dissent, Hopkins, J., 28 AD2d 920), it represents the applicable law herein.
The remaining and principal issue concerns the constitutionality of respondents’ actions. The New York Constitution provides that "No person shall be denied the equal protection of the laws of this state or any subdivision thereof.” (NY Const, art I, § 11.) A similar prohibition is set forth in the United States Constitution (US Const, 14th Amdt, § 1). The question to be decided herein is whether the respondents’ determination to withhold salary increases from these petitioners violated those constitutional prohibitions. The county’s previously adopted graded salary plan had the force and effect of a local law (Matter of Petrocelli v McGoldrick, 288 NY 25; Matter of Beggs v Kern, 284 NY 504) and employees affected thereby are constitutionally entitled to equal treatment thereunder. Here, such equality of treatment has been denied. "Arbitrary and unjustified discrimination violates the Constitution when certain individuals of a class are selected by government for treatment distinctly different and oppressive as opposed to others of the same class”. (Nassau Chapter CSEA v County of Nassau, 88 Misc 2d 289, 299.) "An agency of the State denies equal protection when it treats persons similarly situated differently under the law”. (Matter of Abrams v Bronstein, 33 NY2d 488, 492.) That is not to say, however, that every difference in treatment afforded persons within a particular class is unconstitutional. They need not be treated in identical fashion in all circumstances, but any significant difference or distinction must be founded upon grounds having a fair and substantial relationship to the accomplishment of a valid State objective.
*769 The discrimination common to each of these proceedings, the withholding of 1977 salary increases, is founded solely upon petitioners’ nonunion status. While similarly graded employees were afforded raises pursuant to their collective bargaining agreement, increases were denied these petitioners solely because of their nonmembership in the collective bargaining unit. As in the Abrams (33 NY2d 488, supra) and Nassau (88 Misc 2d 289, supra) cases, the governmental objective sought to be accomplished or advanced by this discriminatory treatment is fiscal economy. But that objective was not sought to be accomplished by means of any equitably designed, consistently applied, all encompassing plan of salary reductions, salary grade reclassifications, pay raise deferments, employee furloughs, job eliminations, or other carefully conceived, fairly distributed economic measures (cf. Koenig v Moran, 56 AD2d 254 supra; and see Committee of Interns and Residents v City of N. Y., 87 Misc 2d 504, supra; Matter of Subway-Surface Supervisors Assn. v New York City Tr. Auth., 85 Misc 2d 695). Rather, the respondents elected to impose an economic hardship upon a nonunion minority of similarly graded employees. I find their actions to be constitutionally impermissible.
Petitioners’ nonunion status is founded upon the managerial and confidential nature of their duties and is mandated by statute (Civil Service Law, § 201, subd 7, par [a]; § 214). This involuntary exclusion from the collective bargaining process has no relevancy whatsoever to the county’s fiscal situation. Their nonunion status has no "fair and substantial” relationship to the objective sought to be accomplished, a meaningful reduction of county expenditures. This irrelevancy is evidenced by the fact that substantial numbers of nonunion, white collar employees were afforded 1977 salary increases in spite of the budgetary provisions to the contrary. That inconsistency serves to emphasize the haphazard and arbitrary nature of the respondents’ actions in denying equivalent raises to similarly graded employees. The withholding of increases otherwise payable to petitioners Scime, Engler and Boecio for the year 1976 and payable to all petitioners for the year 1977, whether founded upon their prior year’s earnings, or their nonunion membership is clearly discriminatory and unlikely to effect any significant reduction of county expenditures. The actions complained of are, therefore, unconstitutional, null and void and petitioners are entitled to the relief *770 they request (Nassau Chapter, CSEA v County of Nassau, supra).