**MTA BUS NON-UNION EMPLOYEES RANK AND FILE COMMITTEE by its President Anthony SIMONE and its Treasurer Salvatore Fusco, and Anthony Simone, Salvatore Fusco, Jerome Anthony, Raymond Gonzalez, John Scaraggi, Thomas Sharkey, Peter Alvarez, John Provetto, Thomas Casey, John Gifford, Norma Arroyo, Francis Doyle, Richard Johnson, and Michael Biondi, Plaintiffs,**

v.

**METROPOLITAN TRANSPORTATION AUTHORITY and MTA Bus Company, Defendants.**

No. 11 Civ. 4493 JSR.

United States District Court, S.D. New York.

Sept. 25, 2012.

Marc David Braverman, Milo Silberstein, William J. Dealy, Dealy & Silberstein, LLP, New York, NY, for Plaintiffs.

Helene Fromm, Ching Wah Chin, Metropolitan Transportation Authority, Mary Fisher Bernet, Robert Abrams, Attorney General of New York, Steve S. Efron, Steve S. Efron Attorney at Law, New York, NY, for Defendants.

## MEMORANDUM ORDER

JED S. RAKOFF, District Judge.

The MTA Bus Non–Union Employees Rank and File Committee (the "Committee"), along with fourteen individual plaintiffs, bring this action against defendants Metropolitan Transportation Authority ("MTA") and the MTA Bus Company ("MTA Bus"). The individual plaintiffs are non-union current or former employees of MTA Bus and constitute the sole members of the Committee. Joint Statement of Material Facts Pursuant to Local Rule 56.1 ("Joint 56.1") ¶¶ 5–6. Before they were employees of MTA Bus, the individual plaintiffs worked at New York Bus Service ("New York Bus"). *Id.* ¶ 7. Plaintiffs assert that defendants engaged in 1) violations of the Equal Protection Clauses of the United States Constitution and the New York State Constitution, 2) two distinct breaches of contract, 3) a violation of Section 115 of the New York Civil Services Law, and 4) negligent misrepresentation,

all in connection with pension benefits that plaintiffs received or failed to receive from MTA Bus.

The parties do not dispute any of the underlying facts, and as a result, submitted a joint statement of material facts in connection with their respective motions for summary judgment. Defendants moved for summary judgment on all claims, and plaintiffs moved for summary judgment on the equal protection and breach of contract claims. After careful consideration of the parties' written submissions and oral arguments, the Court hereby grants the defendants' motion for summary judgment on all claims.

MTA Bus is a public benefit corporation and a subsidiary of the MTA. *Id.* ¶ 3. It was created in 2004 to provide bus services in areas formerly served by seven private franchise bus companies, namely New York Bus and six other private bus companies (collectively the "Seven Private Bus Companies").[1] *Id.*

Each of the fourteen individual plaintiffs was formerly employed by New York Bus. *Id.* ¶ 7. Those employees began employment with MTA Bus in July of 2005 as non-union employees. *Id.* ¶¶ 7–8.

Eleven of the fourteen plaintiffs received and accepted an offer letter (the "Offer Letter") for employment at MTA Bus, which set forth the terms of their employment.[2] In relevant part, the Offer Letter stated:

> You will begin participation in the MTA Defined Benefits Pension Plan, which will mirror the benefits provided by the

---

1. In addition to New York Bus, those companies are Liberty Lines Express, Inc.; Queens Surface Corporation; Green Bus Lines, Inc.; Command Bus Company, Inc.; Triboro Coach Corp.; and Jamaica Buses, Inc. Joint 56.1 ¶ 3.

2. As discussed further *infra*, plaintiffs Salvatore Fusco, John Gifford, and Francis Doyle did not receive the letter.

New York Bus Service Employee's Pension Plan.

\* \* \* \* \* \*

In the event of a discrepancy between the terms of this offer letter and the Pension Plan document or MTA policies, the Pension Plan document and the MTA policies shall govern in all cases. Like all non-represented employees of the MTA and its agencies, the outlined benefits and the like are subject to modification. However, you will not be treated differently than other non-represented MTA employees.

Joint 56.1 Ex. 10.[3]

Plaintiffs and other former employees of the Seven Private Bus Companies were assigned to particular articles of the MTA Defined Benefit Plan (the "MTA DB Plan") based on their previous employer. *Id.* ¶ 63. MTA Bus employees formerly employed by New York Bus, including the plaintiffs here, were assigned to Article 16 of the MTA DB Plan. *Id.* ¶ 63(c). Under Article 16, plaintiffs were entitled to receive a pension benefit calculated at $82 for each year of service with a normal retirement age of 62. *Id.* This mirrored the benefits they were entitled to receive under the New York Bus pension plan at the time of their transition to MTA Bus. Joint 56.1 ¶¶ 63(c); 64.

Local 100 ("Local 100") of the Transport Workers Union represented the unionized MTA Bus employees who formerly worked for five of the private bus companies, including those unionized workers who formerly worked for New York Bus. *Id.* ¶ 67. During the course of collective bargaining between MTA Bus and Local 100, an impasse was declared and the dispute went to arbitration. *Id.* ¶ 67. After, the arbitration, and pursuant to an impasse award (the "impasse award") and further negotiations, all unionized employees of MTA Bus were assigned to Modified Article 14 of the MTA DB Plan and became entitled to a pension benefit calculated at $105 for each year of service with a normal retirement age at 57. *Id.* Also pursuant to the impasse award, the required pension contributions for unionized former New York Bus employees increased from $25.00 to $29.06 per week. *Id.*

Approval by the MTA Board (after review and approval by the MTA Chairman and Chief Executive Officer) is required before any amendment to the MTA DB Plan can be passed. *Id.* ¶ 66. After the arbitrator's impasse award, MTA Bus's President, Joseph Smith, wrote a letter and proposal to the MTA's Chairman and CEO, Jay Walder, stating that "[f]or some of these employees, MTA Bus is faced with a situation where the pension benefits for its nonrepresented employees [including plaintiffs] are less than those of the employees they manage, which is not an effective pension policy." Joint 56.1 Ex. 27. Smith recommended that MTA Bus amend the MTA DB Plan to increase the pension benefits of non-unionized MTA Bus employees, including plaintiffs. *Id.* ¶¶ 65, 91–95; Ex. 27. MTA Bus management also referred to "pension inequities" between MTA Bus employees in several documents given to Walder. *Id.* ¶ 87, 89.

Walder asked Margaret Connor, the MTA Senior Director, Human Resources and Retirement Programs, to examine Smith's recommendations. *Id.* ¶¶ 96–97. In January 2011, after the conclusion of collective bargaining negotiations with the

---

**3.** The parties have submitted their exhibits as attachments to their joint 56.1 statement, rather than as exhibits to a separate declaration. Therefore, this Opinion will refer to those exhibits as "Joint 56.1 Ex.—."

unionized employees,[4] Connor prepared a proposed amendment to the MTA DB Plan, which incorporated Smith's recommendations and increased the pension benefits of certain non-represented MTA Bus employees (including plaintiffs) by assigning them to Modified Article 14 of the MTA DB Plan. *Id.* ¶ 107. Connor believed that, "as a human resources matter, it was not a good practice" for supervisors to be entitled to lesser pension benefits than the employees they supervised. *Id.* ¶ 108. Even though the proposed amendment would only affect 248 employees at MTA Bus, *see* Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment ("Pls.' Answering Mem.") at 3, it was estimated that adopting the proposed amendment would cost MTA Bus approximately $255,000 per year. Joint 56.1 Ex. 27.

When Connor and Walder discussed this proposal in January 2011, Walder determined that the "human resources benefits" were insufficient to justify advancing the proposal to the MTA Board. Joint 56.1 ¶ 109. Walder noted MTA's constrained financial circumstances (which had already resulted in recent fare increases, service cuts, and layoffs); the efforts of the MTA, New York State and New York City to cut pensions to reduce costs; and the MTA's ongoing negotiations with the Transport Workers Union regarding pension reform. *Id.* Walder and Connor concluded that the proposal would undermine the MTA's pension reform efforts, would not be consistent with the MTA's precarious financial situation, and might not be approved by the Finance Committee. *Id.* They made the decision not to advance the pension proposal to the MTA Finance Committee and MTA Board in January 2011, and the

proposal has not subsequently been advanced for MTA Board approval. *Id.* ¶ 110.

■ Against this factual background, the Court turns to the pending cross-motions for summary judgment, starting with the lone federal claim in the Complaint, which alleges that the treatment of the plaintiffs with respect to their pension benefits violated the Equal Protection Clause of the United States Constitution. It is undisputed that "rational basis" review applies to this claim. Therefore, a "classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *FCC v. Beach Communications,* 508 U.S. 307, 313, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993). Conversely, a court may only strike down "patently arbitrary or irrational" classifications under rational basis review. *U.S. Railroad Retirement Bd. v. Fritz,* 449 U.S. 166, 177, 101 S.Ct. 453, 66 L.Ed.2d 368 (1980).

■ Plaintiffs allege that MTA Bus treats them differently than it treats similarly situated MTA Bus employees with respect to pension benefits. Am. Compl. ¶ 105. Plaintiffs argue that it "is wholly irrational" to award pension benefits "based entirely upon a characteristic of the employee that has nothing to do with his or her job responsibilities, job history or performance," but rather that "is based entirely upon the private bus company that the employee happened to work for prior to being employed by MTA Bus." Plaintiffs' Memorandum of Law in Support of their Motion for Summary Judgment

---

4. Walder decided that, based on MTA's labor strategy, the MTA should wait to consider Smith's pension benefit proposal until the conclusion of collective bargaining with MTA Bus's unionized employees. *Id.* ¶ 100.

("Pls.' Mem.") at 20–21. Defendants concede that there are no distinctions in job duties or functions between the plaintiffs and other non-unionized MTA Bus employees. Joint 56.1 ¶ 34.

As an initial matter, it important to note that while plaintiffs spend significant time in their papers comparing the pension benefits received by plaintiffs, who are non-unionized managers, with pension benefits received by rank-and-file union employees, this comparison is largely irrelevant. Plaintiffs are asserting a claim for differential treatment of similarly situated employees, and they explicitly acknowledge that the similarly situated employees are plaintiffs and other *non-unionized* employees of MTA Bus. Pls.' Answering Mem. at 3. Accordingly, the relevant question is whether there is a rational basis for the different benefits received by plaintiffs and other non-represented MTA Bus employees.

When MTA Bus was created through the purchase of the Seven Private Bus Companies, all non-represented employees were given the pension benefits that they had respectively received at their previous employers; this distinction remains in force today. Defendants present several rational bases for this policy. First, they argue that the policy had the benefit of capping pension liabilities at existing levels, and that those cost-saving measures provided a rational basis for the policy. Second, defendants argue that the policy protected the reliance interests of MTA Bus employees, because the policy ensured that all MTA Bus employees would receive the same pensions that they were receiving before the transition to MTA Bus control. Defendants' Reply Memorandum of Law in Support of their Motion for Summary Judgment ("Defs.' Reply Mem.") at 3. In essence, defendants argue that their policy is a grandfather clause, which protects the plaintiffs' expectation interests. *See McCann v. City of Chicago*, 968 F.2d 635, 638 (7th Cir.1992) ("Grandfather clauses ... protect expectation interests, which is enough to make them rational and so defeat challenge under the equal protection clause.") Tying the budget saving and expectation arguments together, defendants argue that their pension policy had a rational basis because "[a]ny other approach would have either greatly expanded MTA Bus's pension liabilities or required the reduction in benefits of other non-represented employees so [plaintiffs] could get greater benefits—benefits beyond what they had any expectation of receiving." Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment ("Defs.' Mem.") at 13.

In response, plaintiffs, who bring their equal protection claim under both state and federal law, rely nearly exclusively on *Scime v. County Legislature of Erie County*, 90 Misc.2d 764, 395 N.Y.S.2d 952 (Sup. Ct. Erie Co.1977), and *Weissman v. Bellacosa ("Weissman I")*, 129 A.D.2d 189, 517 N.Y.S.2d 734 (2d Dept.1987).[5] As to the latter, however, the relevant precedent is *Weissman v. Evans (Weissman II)*, 56 N.Y.2d 458, 452 N.Y.S.2d 864, 438 N.E.2d

---

**5.** Plaintiffs also rely on statements, discussed above, by MTA and MTA Bus management about the inequities in the pension benefits for MTA Bus employees. But those statements are largely inapposite, because they primarily identify the problems associated with a system where represented employees have better pensions than their non-represented managers, rather than a system where different managers receive different pensions. Again, the proper comparison is between plaintiffs and other non-represented similarly situated employees. Moreover, even if the aforementioned statements were on point, a supervisor's statements that a system is unfair or bad for morale does not mean that the system violates equal protection.

397 (1982), because *Weissman II* was a similar case decided by the Court of Appeals rather than the Second Department. Both *Scime* and *Weissman II* found that salary disparities could give rise to an equal protection claim. Of course, in interpreting plaintiffs' federal claim, neither case is binding on this Court, but in any event, both cases are easily distinguishable.

First, both cases involved salaries and not pensions. The Court agrees with the defendants that a pension, "unlike a salary, is a form of deferred compensation that reflects service to an employer over the length of an entire career." Defs.' Reply Mem. at 2. In the pension benefit context, unlike the salary context, it makes particular sense to base pension benefits on the policies of a previous employer, because the terms of the pension itself were based in part on the length of service with the previous employer. The plaintiffs did not want to start fresh at MTA Bus; instead, it was critical that their years of service to New York Bus counted towards their pension even though they were now working for a new company.

Moreover, both *Scime* and *Weissman II* involved arbitrary conduct not present here. In *Scime*, Erie County enacted salary distinctions between unionized employees and those non-unionized employees making over $20,000 a year. The court struck down the plan because it was not equitably designed or consistently applied. The court found no rational basis for the distinction in large part because "substantial numbers of nonunion, white collar employees were afforded ... salary increases in spite of the budgetary provisions to the contrary." *Id.* at 769, 395 N.Y.S.2d 952.

In *Weissman II*, the Court of Appeals ruled that the policy whereby New York State judges in different localities received different salaries was based on the "dis-credited funding practice" of having counties pay its judges different salaries. *Id.* at 464, 452 N.Y.S.2d 864, 438 N.E.2d 397. The New York State court system was unified in large part to stop that practice, so the Court of Appeals found that there was no rational basis for basing the unified system's salaries on those earlier locality salaries. *Id.* at 462, 452 N.Y.S.2d 864, 438 N.E.2d 397.

Shortly after *Weissman II*, moreover, the New York Court of Appeals decided *Tolub v. Evans*, 58 N.Y.2d 1, 457 N.Y.S.2d 751, 444 N.E.2d 1 (1982). In *Tolub*, the court examined the salary disparities of law assistants after the unification of New York's court system. The Court rejected plaintiffs' equal protection challenge and held that:

> [T]he Legislature chose to incorporate [the law assistants] into the State salary schedule, using their prior salary as a guide to the incremental level they should be placed at. This system assured that the cost of unification would be reasonably controlled and that no one would suffer any loss in salary. Thus, it cannot be said that the statutorily mandated system was irrational.

*Tolub*, 58 N.Y.2d at 8, 457 N.Y.S.2d 751, 444 N.E.2d 1.

The circumstances in *Tolub* are much like the circumstances here. The distinctions drawn by the defendants in the instant case are neither arbitrary nor irrational. The differences in pension benefits between similarly situated non-unionized employees coming from different companies were based on the pension policies of the companies where the non-unionized MTA employees previously worked. The Supreme Court has made clear that "[t]he protection of reasonable reliance interests is not only a legitimate governmental objective: it provides an exceedingly persuasive justification" sufficient to overcome an

equal protection challenge. *Heckler v. Mathews,* 465 U.S. 728, 746, 104 S.Ct. 1387, 79 L.Ed.2d 646 (1984). The plaintiffs were not arbitrarily selected for poor treatment by virtue of their employment at New York Bus; rather the defendants simply retained the pension benefits that plaintiffs had received at New York Bus while giving those employees credit for the number of years that they had worked for New York Bus. Therefore, it is not just the reduction in costs, but the reduction in costs achieved through a rational distinction drawn between employees, that allows this system to survive constitutional challenge.

While the distinction between the previous employees of the Seven Private Bus Companies is a relatively simple one to understand, the distinction between the plaintiffs and the new hires of MTA Bus presents more difficult questions, because those new hires receive better pension benefits than plaintiffs. The rational bases discussed above are weaker when comparing plaintiffs to the new hires because the new hires were not simply given the pensions they were previously earning at their old job. The Court concludes, however, that there is a rational basis for this distinction because there are a wide range of pension benefits among MTA Bus employees, and plaintiffs' argument related to the new hires is essentially an argument that there can be no difference in pension policies among non-represented MTA Bus employees. Unless all MTA Bus employees received the same pension, the new hires would receive different benefits from at least some of those employees. But, based on the reliance interests discussed above, it was rational to provide former employees of the Seven Private Bus Companies with the pension benefits they had been receiving at their old employer.

Moreover, because employees hired from the Seven Private Bus Companies were given credit for the years accrued at their previous bus companies, there is a rational basis for providing higher pension benefits to new hires who will not receive credits for hours worked at any prior company. While it is true that the pension benefits given to new hires raise the possibility that defendants could have done more to cut costs overall, defendants argue that they needed to provide this level of pension benefits to attract new employees who might spend much of their career at MTA Bus. Defs.' Reply Mem. at 3. In any event, the fact that the pension policy could have cost less money, even if true, does not undermine the reliance and cost containment rationales for the policy; it simply means that it was theoretically possible for defendants to cut even more costs. It is worth reiterating that the question the Court must address is not whether this is sound policy, but whether the distinctions were rational. Therefore, the Court grants summary judgment to the defendants on the federal equal protection claim, and denies plaintiffs' cross-motion on same.[6]

Having dismissed the sole federal claim, the Court must now decide whether to take supplemental jurisdiction over the state law claims. As a general matter, federal district courts have supplemental jurisdiction over state law claims "that are so related to claims in the action within [the courts'] original jurisdiction that they form part of the same case or controversy under Article III of the United States

---

**6.** The defendants also rely on an additional rational basis, namely that the defendants' pension policy simply followed the contract signed between the City and the MTA Bus. In light of the Court's conclusions above, the Court need not and does not reach this additional asserted rational basis.

Constitution." 28 U.S.C. § 1367(a). A district court "may decline to exercise supplemental jurisdiction" if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c) (emphasis added). In deciding whether to exercise supplemental jurisdiction, this Court must weigh "the values of judicial economy, convenience, fairness, and comity." *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988).

■ At this stage of the litigation, it would be inconvenient, unfair, and uneconomical to remand the remaining state claims to state court. The parties have already completed all discovery, including several depositions, and, as a result the parties have agreed on a joint statement of material facts. Therefore, this litigation is near the end, rather than in its "infancy." *Cf. TPTCC NY, Inc. v. Radiation Therapy Services, Inc.*, 453 Fed.Appx. 105, 107 (2d Cir.2011).

Moreover, while plaintiffs allege equal protection violations of the New York and United States Constitutions, the analysis of these two claims is identical, which is a further reason to exercise supplemental jurisdiction over the claim brought under the New York State Constitution. And once the Court exercises supplemental jurisdiction over that issue, it makes little sense to decline jurisdiction over the remaining state law issues, none of which involves novel issues of state law.

Accordingly, the Court exercises supplemental jurisdiction over all of the state law claims and will address each of the state law claims in turn. As to the equal protection claim under the New York Constitution, the Equal Protection Clause in the New York State Constitution is "no broader in coverage than its Federal counterpart." *New York City Managerial Employees Assoc. v. Dinkins*, 807 F.Supp. 958, 966 n. 4 (S.D.N.Y.1992). The parties

agree that the same analysis applies to the federal and state equal protection claims, *see* Pls.' Mem. at 17; Defs.' Mem. at 9 n. 2, and therefore summary judgment is granted to defendants (and denied to plaintiffs) on the state equal protection claim for the reasons stated above with respect to the federal equal protection claim.

The Court therefore turns to the two breach of contract claims. The first is based on Article 16 of the MTA DB Plan, in which plaintiffs are participants. *See* Am. Compl. ¶¶ 147–54. The second is based on the offer letters that MTA Bus gave to most of the plaintiffs in 2005. *See* Am. Compl. ¶¶ 140–46.

■ Under New York Law, the "initial interpretation of a contract is a matter of law for the court to decide." *Promisel v. First Am. Artificial Flowers, Inc.*, 943 F.2d 251, 257 (2d Cir.1991). "[A] written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms[.]" *UBS Financial Services, Inc. v. West Virginia University Hospitals, Inc.*, 660 F.3d 643, 649 (2d Cir.2011) (quoting *Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 569, 750 N.Y.S.2d 565, 780 N.E.2d 166 (2002)). The construction of an unambiguous contract is appropriate for resolution on summary judgment. *See, e.g., Adirondack Transit Lines, Inc. v. United Transp. Union, Local 1582*, 305 F.3d 82, 85 (2d Cir.2002).

■ First, as to the Article 16 claim, plaintiffs rely on a provision of Article 16 of the MTA DB Plan which governs employee *contributions*. That provision states that, "[t]he amount of Employee contribution, whether or not the Employee is a member of Local 100 of the Transport Workers Union, shall be determined by the collective bargaining agreement that is in effect between the [MTA Bus] and Lo-

cal 100 of the Transport Workers Union at the time that the contributions are collected." MTA DB § 16.4.02. The parties agree that represented MTA Bus employees who are members of Local 100 and who formerly worked for New York Bus now contribute more to their pension plan than do plaintiffs—$2 9.06 per week compared to $25 per week. Joint 56.1 ¶ 64, 67. If plaintiffs were seeking by this suit to contribute more to their pensions, they would have a strong claim, but plaintiffs are not asking for an increase in contributions without an increase in benefits.

While Section 16.4.02 clearly governs pension contributions and not pension *benefits*, Section 16.3.01 of the MTA DB Plan, a section that the plaintiffs ignore, is unambiguous and controlling. That section states that the plaintiffs will receive the 82/62 pension benefit plan. There is no provision in the MTA DB Plan that states that benefits must rise when contributions rise, and there is no provision that says that non-union employees will receive the same *benefits* as union employees. If the parties wanted to link the *benefits* of the non-union and union employees, they clearly knew how to write that into the MTA DB Plan as they did for contributions. Section 16.3.01 is unambiguous and directly on point, and therefore the defendants' motion for summary judgment on this claim is granted and the plaintiffs' motion is denied.

■ Turning next to the Offer Letter claim, the Offer Letter stated that plain-tiffs would receive pension benefits at MTA Bus "which will mirror the benefits provided by the New York Bus Service Employees' Pension Plan." Joint 56.1 Ex. 10.[7] It also stated that:

> In the event of a discrepancy between the terms of this offer letter and the Pension Plan document or MTA policies, the Pension Plan document and the MTA policies shall govern in all cases. Like all non-represented employees of the MTA and its agencies, the outlined benefits and the like are subject to modification. However, you will not be treated differently than other non-represented MTA employees.

*Id.*

There are several disputes about the meaning of these paragraphs.

To begin with, the parties dispute whether the benefits did in fact "mirror" the benefits that the plaintiffs received at New York Bus. Although plaintiffs received the pension benefits they were receiving at the time control shifted from New York Bus to MTA Bus, plaintiffs argue that if they were still employed at MTA Bus these benefits would have increased in lockstep with any increase in pension benefits for represented employees. In making this argument, however, plaintiffs cannot rely on the New York Bus Pension Plan, which did not itself state that the non-represented employees would receive the same benefits as represented employees. Joint 56.1 Ex. 7. Instead, plaintiffs seek to rely on the New York

---

7. Three plaintiffs—Francis Doyle, Salvatore Fusco, and John Gifford—did not receive offer letters when they joined MTA Bus. Joint 56.1 ¶¶ 36, 48, 50, Gifford did receive a "reassignment letter," which contained many of the same terms, and most importantly included the statement that "[i]n the event of a discrepancy between the terms of this offer letter and the Pension Plan document or MTA Bus policies, the Pension Plan document and MTA Bus policies shall govern in all cases." Joint 56.1 Ex. 17 at 1. Therefore, while Doyle and Fusco do not have a claim based on the offer letter, assuming arguendo that Gifford could join in the offer letter claim of the other eleven plaintiffs, that offer letter claim fails for the same reasons his co-plaintiffs' claims fail, viz., that the Pension Plan document controls.

Bus Summary Plan Document, *but cf. CIG-NA Corp. v. Amara,* —— U.S. ——, 131 S.Ct. 1866, 179 L.Ed.2d 843 (2011), along with parol evidence. *See* Letter Brief of Milo Silberstein, Feb. 17, 2012, at 1; Letter Brief of Milo Silberstein, Mar. 14, 2012, at 3. The Court concludes that the "mirror" statement fines not unambiguously support plaintiffs' position, at best, it is ambiguous.

Next, defendants argue that the other disputed language in the Offer Letter—that the "outlined benefits and the like" are subject to modification, but that the plaintiffs "will not be treated differently" than other non-represented MTA employees—merely refers to the package of fringe benefits, rather than pension benefits. The Court finds that this is ambiguous as well, because both the fringe benefits and the pension benefits were discussed in the paragraph preceding this statement. *See* Ex. 10. Defendants assert, however, that even if this statement does apply to pension benefits, plaintiffs were in fact treated the same as other MTA employees because each non-represented MTA Bus employee who formerly worked for a private bus company now receives pension benefits based on the pension benefits they would have received from their former employer, and none of those employees has seen an increase in pension benefits since joining MTA Bus. Defs.' Mem. at 19. The flaw in this argument is that the Offer Letter states that plaintiffs will not be treated · differently than other MTA Bus employees, not just MTA Bus employees who previously worked for the Seven Private Bus Companies. As noted above, new employees of MTA Bus receive higher pension benefits than those received by

the plaintiffs. If this statement does apply to pension benefits rather than fringe benefits, however, it does not make much sense, because there were and are many different pension plans at MTA Bus. Therefore, it was clear that plaintiffs were going to be treated "differently" than at least some other employees with respect to pension benefits. Ultimately, the Court finds that this statement is also ambiguous.

If these two ambiguous sections of the Offer Letter stood alone, the Court would deny summary judgment to both parties. But, on the first page of the two page Offer Letter, in the same section as the disputed statements, there is a clear and unambiguous statement: "In the event of any discrepancy between the terms of this offer letter and the Pension Plan document or MTA policies, the Pension Plan document and the MTA policies shall govern in all cases." Joint 56.1 Ex. 10. This is perhaps the clearest sentence in the letter and it is entirely unambiguous.

 As the Second Circuit held in *PaineWebber Inc. v. Bybyk,* 81 F.3d 1193 (2d Cir.1996), "[u]nder New York law, 'a paper referred to in a written instrument and sufficiently described may be made a part of the instrument as if incorporated into the body of it.'" *Id.* at 1201 (quoting *Jones v. Cunard S.S. Co.,* 238 A.D. 172, 173, 263 N.Y.S. 769 (2d Dep't 1933).) The parties agree that this unambiguous reference to the Pension Plan document means that the Pension Plan document is incorporated by reference into the Offer Letter. Letter Brief from Helene Fromm, Mar. 14, 2012, at 1; Letter Brief from Milo Silberstein, Mar. 14, 2012, at 1.[8] The Court has already determined that the "Pension Plan document,"—*i.e.,* the MTA DB Plan—un-

---

8. Moreover, it is irrelevant whether plaintiffs read the MTA DB Plan, because "a party's failure to read a duly incorporated document

will not excuse the obligation to be bound by its terms." *PaineWebber,* 81 F.3d at 1201.

ambiguously supports defendants' assertion that plaintiffs were entitled to 82/62 pension benefits, and that conclusion governs the Offer Letter as well.

Therefore, any ambiguities in the Offer Letter were addressed by this unambiguous statement. Looking at the "entire integrated agreement," *see Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan,* 7 F.3d 1091, 1094–95 (2d Cir.1993), the Offer Letter unambiguously stated, by incorporating Article 16 of the MTA DB Plan, that the plaintiffs were to receive a pension benefit of 82/62. Any other interpretation would read this "discrepancy" sentence right out of the Offer Letter, and this the Court cannot do. *See id.* Accordingly, summary judgment is granted to the defendants (and denied to the plaintiffs) on the Offer Letter breach of contract claim.

██ Plaintiffs also bring a claim asserting that the MTA has violated New York Civil Service Law § 115; plaintiffs argue that this law requires that all New York State employees receive equal pay for equal work. Amend Compl. ¶¶ 131–39. Tellingly, plaintiffs did not move for summary judgment on this claim. New York courts have repeatedly held that this law "merely enunciates a policy and confers no jurisdiction on a court to enforce such policy." *See, e.g., Gladstone v. Board of Educ.,* 49 Misc.2d 344, 346, 267 N.Y.S.2d 444 (Sup.Ct. Kings Co.1966), aff'd, 26 A.D.2d 838, 274 N.Y.S.2d 416 (2d Dep't 1966), aff'd, 19 N.Y.2d 1004, 281 N.Y.S.2d 840, 228 N.E.2d 821, cert. denied, 389 U.S. 976, 88 S.Ct. 480, 19 L.Ed.2d 470 (1967). In addition, even if this Court did have jurisdiction to enforce this claim, the policy "enunciated" in Civil Service Law § 115 applies only to employees who are in the civil service of the State of New York. *Goldberg v. Beame,* 22 A.D.2d 520, 522, 256 N.Y.S.2d 894 (1st Dep't 1965). Plaintiffs are not employees in the civil service of the State of New York because they work for a public authority, which is a separate legal entity. *See Collins v. Manhattan & Bronx Surface Transit Operating Auth.,* 62 N.Y.2d 361, 477 N.Y.S.2d 91, 465 N.E.2d 811 (1984); *Schulz v. State of New York,* 84 N.Y.2d 231, 246–47, 616 N.Y.S.2d 343, 639 N.E.2d 1140 (1994). Therefore, the Court grants defendants' motion for summary judgment on this claim.

██ Finally, plaintiffs assert that the management of MTA Bus told plaintiffs that they would correct the disparities in pension benefits, and that this was a negligent misrepresentation. But, a cause of action for negligent misrepresentation cannot be based on promises of future conduct. *See Hydro Investors, Inc. v. Trafalgar Power Inc.,* 227 F.3d 8, 20–21 (2d Cir.2000) ("However, the alleged misrepresentation must be factual in nature and not promissory or relating to future events that might never come to fruition.") Again, plaintiffs did not move for summary judgment on this claim, and the Court grants summary judgment to the defendants on this claim.

For the foregoing reasons, the Court grants the defendants' summary judgment motion in its entirety and denies the plaintiffs' summary judgment motion. The Clerk of the Court is directed to close document numbers 19, 20, and 21 on the docket of this case and to enter judgment in favor of defendants.

SO ORDERED.