■ In the Matter of SUBWAY SURFACE SUPERVISORS ASSOCIATION, Respondent, v NEW YORK CITY TRANSIT AUTHORITY, Appellant. [959 NYS2d 30]—

Order, Supreme Court, New York County (Emily Jane Goodman, J.), entered April 23, 2010, which denied respondent New York City Transit Authority's cross motion to dismiss the petition brought pursuant to CPLR article 78, affirmed, without costs.

The New York City Transit Authority (TA) is a public benefit corporation organized and existing under Public Authorities Law § 1201 *et seq.* to provide bus and subway services in New York City. In August 1984, as part of a reorganization of the TA, the New York City Department of Personnel created the title of Station Supervisor with two assignment levels, Station Supervisor Level I (SS-I) and Station Supervisor Level II (SS-II). Since Station Supervisor is a single title, the skills requirements for SS-I and SS-II are the same, and applicants for jobs in this title need take a single competitive exam only; no additional exam is needed to move from SS-I to SS-II.

Petitioner Subway Surface Supervisors Association (SSSA) is the exclusive representative of SS-I workers, while SS-II workers are represented by the Transit Supervisors Organization (TSO). The initial salary range when the Station Supervisor title was created was $24,338-$36,047. Through the collective bargaining process, SSSA and the TA reached successive multiyear agreements including wage increases and other benefits for SS-Is. The TSO and the TA likewise reached successive multiyear agreements for SS-IIs.

When the two job categories were created, the functions and duties of SS-Is and SS-IIs differed, and SS-IIs received about

$14,000 more in base salary. Currently, SS-IIs earn about $83,000, and SS-Is earn about $69,000. However, since 2003, the TA has been shifting work from SS-IIs to SS-Is, and, according to SSSA, there is currently no significant distinction between the work performed by SS-Is and that performed by SS-IIs. SSSA further contends that, as a result of attrition in the SS-II position, a greater portion of the work common to both positions is assigned to SS-Is.

SSSA alleges that, by assigning SS-Is to perform SS-IIs work, the TA has violated the Civil Service Law, which prohibits "out-of-title work" (Civil Service Law § 61 [2]). In lieu of an answer, the TA moved to dismiss the petition, on the grounds that it was barred by the applicable four-month statute of limitations and by laches. The TA further contended that Supreme Court lacked subject matter jurisdiction over the dispute and that the petition failed to state a cause of action. In opposition, SSSA argued, for the first time, that, since they performed the same work, SS-Is were entitled to be paid at the same rate as SS-IIs, under Civil Service Law § 115 and the Equal Protection Clauses of the United States and New York Constitutions. In reply, the TA contended that SSSA had abandoned the petition, which sounded under Civil Service Law § 61. The TA similarly argued that the court should not consider SSSA's Civil Service Law § 115 claims, which it raised for the first time in opposition to the TA's motion to dismiss the petition. The TA also posited that, in any event, section 115 only applies to state employees, that the TA is a public authority, and that its employees are, therefore, not governed by section 115. The TA further argued that, by virtue of its repeated participation in negotiating salary agreements for SS-Is, SSSA should be estopped from challenging, or had waived or otherwise lost any standing to challenge, the salary levels. Finally, the TA asserted that SSSA's section 115 claim implicated the Taylor Law (Civil Service Law art 14) and therefore fell within the exclusive jurisdiction of the Public Employment Relations Board (PERB), and not Supreme Court, in the first instance.

By leave of court, SSSA filed a supplemental affirmation in response to arguments raised by the TA in its reply. Among other things, SSSA contended that Public Authorities Law § 1210 (2) expressly provided that TA employees are governed by the provisions of the Civil Service Law, including section 115. The TA filed a sur-reply reiterating that SSSA had abandoned its claim under Civil Service Law § 61, which was the sole theory identified in the petition. The TA also contended that it was not a division of the State and that its employees were not state employees or otherwise subject to Civil Service Law § 115.

By order entered April 23, 2010, the court held that SSSA had abandoned its claim under Civil Service Law § 61, and had advanced its claim under section 115 for the first time only in opposition to TA's motion to dismiss the petition. The court declined to dismiss the petition, however, noting that it had afforded the TA ample opportunity to respond to SSSA's new arguments. On the merits, noting that Public Authorities Law § 1210 (2) expressly states that TA employees are governed by the provisions of the Civil Service Law, the court found that Civil Service Law § 115 did apply to those employees. The court also opined that, under section 115, SS-Is would be entitled to the same pay as SS-IIs if they performed the same work. The court found, however, that questions of fact existed whether SS-Is and SS-IIs performed the same duties. The court referred this factual issue to a Special Referee to report on. Nevertheless, the court granted the TA leave to appeal the court's determination of the four issues on which its decision rested.

Civil Service Law § 115 codifies a critical public policy, which is that, "to attract unusual merit and ability to the service of the state of New York, to stimulate higher efficiency among the personnel, to provide skilled leadership in administrative departments, to reward merit and to insure to the people and the taxpayers of the state of New York the highest return in services for the necessary costs of government," there should be "equal pay for equal work, and regular increases in pay in proper proportion to increase of ability, increase of output and increase of equality of work demonstrated in service." If the dissent's mistaken interpretation of the case law were applied, this would become a hollow promise that afforded no remedy for those it was designed to protect, such as the petitioners here. The dissent has further misconstrued the nature of this dispute as involving a mere dissatisfaction with a collective bargaining agreement, when in reality it involves a violation of the important public policy codified in the Civil Service Law.

The dissent acknowledges that Civil Service Law § 115 applies to TA workers, notwithstanding that they are, strictly speaking, employees of a public authority. Nevertheless, the dissent incorrectly opines that the workers are wrong to invoke that statute, because it "merely enunciates a *policy* and confers no jurisdiction on a court to enforce such policy" (quoting *Matter of Civil Serv. Empls. Assn., Inc., Local 1000, AFSCME, AFL-CIO v State of N.Y. Unified Ct. Sys.*, 35 AD3d 1008, 1010 [3d Dept 2006] [internal quotation marks omitted]). A closer review of the cases reveals that no such "jurisdictional" prohibition exists. Indeed, *Gladstone v Board of Educ. of City of N.Y.* (49 Misc

2d 344 [1966], *affd* 26 AD2d 838 [1966], *affd* 19 NY2d 1004 [1967], *cert denied* 389 US 976 [1967]), on which *Matter of Civil Serv. Empls. Assn.* relies, overstated the holdings of the cases it cited. For example, in one of those cases, *Matter of Goldberg v Beame* (22 AD2d 520 [1st Dept 1965], *revd on other grounds* 18 NY2d 513 [1966]), this Court, in construing Civil Service Law § 37, the forerunner to section 115, observed that the statute "is a mere statement of general policy applicable to all Civil Service employees. *It does not contain, however, a mandatory direction that such principle must be applied in all cases under any and all conditions*" (22 AD2d at 522 [emphasis added], quoting *Matter of Beer v Board of Educ. of City of N.Y.*, 83 NYS2d 485, 486-487 [Sup Ct, Kings County 1948], *affd* 274 App Div 931 [1948], *appeal dismissed* 299 NY 565 [1949]). *Beer* was also cited by the *Gladstone* court.

In its last pronouncement on the subject in 2000, this Court stated that "[t]he principle of equal pay for equal work need not be applied in all cases under any and all circumstances" (*Bertoldi v State of New York*, 275 AD2d 227, 228 [1st Dept 2000], *lv denied* 96 NY2d 706 [2001]). The clear implication of that statement is that there are circumstances in which the principle of equal pay for equal work must be applied and that this Court has the power to apply it. The mere fact that there are no reported cases in which a court has exercised such power does not mean that courts do not have that power. The dissent fails to reconcile the case law acknowledging that there may be circumstances in which the policy of equal pay for equal work must be applied, with its conclusion that no court has jurisdiction to apply it. The case law establishes that a court need not presume that a disparity in pay is violative of section 115, but that, nevertheless, it may correct the disparity where "there is palpable discrimination or arbitrary action detrimental to the individual or class" (*Beer*, 83 NYS2d at 487). SSSA's petition sufficiently alleges "arbitrary action" by the TA in paying SS-Is less than SS-IIs who perform the same work.

Contrary to the TA's position, the issue here is not whether the union negotiated an unfavorable deal but whether the TA has violated public policy. Such disputes are amenable to review by the courts (*see e.g. Matter of Zuckerman v Board of Educ. of City School Dist. of City of N.Y.*, 44 NY2d 336 [1978]). The TA argues that SSSA's exclusive remedy resides in the Taylor Law with PERB alone having jurisdiction over the dispute, because the dispute goes to the terms and conditions of employment, which are required to be negotiated in good faith through collective bargaining. However, to characterize this dispute as one

solely concerning terms that can be bargained for is to view it too narrowly.

This case is not merely about the collective bargaining agreement that SSSA negotiated, because SSSA has no ability to control pay disparity through collective bargaining. No matter what salary terms SSSA strikes with the TA through collective bargaining, it is powerless to prevent the TA from shifting work away from SS-IIs, who are represented by a separate union, and onto SS-Is. Indeed, this case contrasts with *Matter of Trerotola v New York City Off-Track Betting Corp.* (86 AD2d 822 [1st Dept 1982], *affd* 58 NY2d 856 [1983]), the primary case upon which the TA relies. There, as here, a group of OTB branch managers complained that they were being paid less than another group of branch managers that was performing the same work. However, in *Trerotola*, the two worker groups with disparate salaries were represented by the same union in contract negotiations. The court held there that the very changes that led to the disparity, such as consolidation of job titles and elimination of duties attached to job titles, were part of the collective bargaining process. Here there is no reason to believe that SSSA, during that process, agreed to terms that created the very situation that led to their salaries being lower than that of brother and sister workers with the same responsibilities.

Contrary to the dissent's contention, SSSA could not prevent the TA from arbitrarily creating further inequalities in the nature of work assigned to the two different classes of workers, regardless of what salary SSSA negotiated with the TA. For this reason, and contrary to the dissent's position, the fact that SS-Is bargained for their salary has no bearing on whether they have a viable equal protection claim, and we find that the petition sufficiently alleges the claim (*see Margolis v New York City Tr. Auth.*, 157 AD2d 238, 241-242 [1st Dept 1990]). Indeed, because of SSSA's inability to control SS-II pay levels, only a judicial declaration that the TA illegally differentiated between the two classes of workers, if that is indeed what occurred, could prevent a salary disparity from re-emerging. Concur—Mazzarelli, J.P., Moskowitz and Manzanet-Daniels, JJ.

Sweeny and Abdus-Salaam, JJ., dissent in a memorandum by Abdus-Salaam, J., as follows: I respectfully dissent. I would dismiss the petition for failure to state a cause of action.

Respondent is correct that in the absence of an application by petitioner to replead, or for leave to serve an amended pleading accompanied by the proposed amended pleading (*see* CPLR 3025 [b]), the proper procedure under these circumstances would have been for the court to dismiss the petition once petitioner

abandoned its claim based on Civil Service Law § 61 (2). By ordering a hearing on the issue of whether respondent violated Civil Service Law § 115, the court implicitly deemed the pleading amended and recognized that petitioner has a cognizable claim for violation of that statute. I disagree with the majority's view that petitioner states a cognizable claim under Civil Service Law § 115.

Civil Service Law § 115 "merely enunciates a *policy* and confers no jurisdiction on a court to enforce such policy" (*Matter of Civil Serv. Empls. Assn., Inc., Local 1000, AFSCME, AFL-CIO v State of N.Y. Unified Ct. Sys.*, 35 AD3d 1008, 1010 [3d Dept 2006] [internal quotation marks omitted]; *see also MTA Bus Non-Union Empls. Rank & File Comm. v Metropolitan Transp. Auth.*, — F Supp 2d —, 2012 WL 4782736, *9, 2012 US Dist LEXIS 143953, *28 [SD NY, Sept. 25, 2012, No. 11 Civ 4493 (JSR)]; *Matter of Trerotola v New York City Off-Track Betting Corp.*, 86 AD2d 822 [1st Dept 1982], *affd for reasons stated below* 58 NY2d 856 [1983]; *Gladstone v Board of Educ. of City of N.Y.*, 49 Misc 2d 344, 346 [1966], *affd* 26 AD2d 838 [2d Dept 1966], *affd* 19 NY2d 1004 [1967], *cert denied* 389 US 976 [1967]; *Matter of Goldberg v Beame*, 22 AD2d 520, 522 [1st Dept 1965], *revd on other grounds* 18 NY2d 513 [1966]). Contrary to the majority's analysis, all of the case law supports respondent's position that Civil Service Law § 115 "merely" enunciates a policy as opposed to providing an enforceable statutory right, and the majority has not pointed to any case where a court has recognized a cognizable cause of action based on a violation of Civil Service Law § 115. *Matter of Zuckerman v Board of Educ. of City School Dist. of City of N.Y.* (44 NY2d 336 [1978]), cited by the majority, did not involve an alleged violation of section 115, but instead concerned a claim that the Board of Education had circumvented the New York State Constitution and the statutory requirements of the Education Law.

While the majority asserts that in *Bertoldi v State of New York* (275 AD2d 227 [1st Dept 2000], *lv denied* 96 NY2d 706 [2001]) we implied that there are circumstances in which the principle of equal pay for equal work must be applied, significantly, we noted that Civil Service Law § 115 "enunciates a *policy* and confers no jurisdiction on a court to enforce such policy" (275 AD2d at 228, quoting *Gladstone*, 49 Misc 2d at 346). That, as the majority points out, section 115 codifies an important public policy does not compel the conclusion that actions at odds with the policy are the basis for liability. Notably, Civil Service Law § 115, entitled "Policy of the state," not only declares it "to be the policy of the state to provide equal pay for

equal work," but also declares the policy to encompass "regular increases in pay in proper proportion to increase of ability, increase of output and increase of equality of work demonstrated in service." By the majority's reasoning and reading of the statute, a cause of action for violation of section 115 could be stated upon allegations that an employee has not received regular increases in pay, a proposition that was clearly not intended by the Legislature in enunciating this policy. Accordingly, petitioner's claim under that statute should be dismissed.

I reject petitioner's claim that the amount of wages for SS-Is agreed to in the collective bargaining process violates the Equal Protection Clause. Petitioner has not cited any case law in which a union, after agreeing to a salary schedule through collective bargaining, has successfully prosecuted a claim that the equal protection clause has been violated because the salary schedule it agreed to was lower than the salary schedule for similarly situated employees (compare *Margolis v New York City Tr. Auth.*, 157 AD2d 238, 241-242 [1st Dept 1990]), and the cases cited therein, which did not involve claims that a contract reached through collective bargaining violated the Equal Protection Clause, but instead, involved disputes that had not been the subject of collective bargaining).* *Matter of Trerotola* (86 AD2d at 822), cited by respondent, is instructive. Although the court did not expressly address the Equal Protection Clause, it found that where petitioner union claimed equal pay for equal work, and Civil Service Law § 115 was inapplicable, there was no basis for granting relief, because "[t]he quarrel [was] a naked endeavor to impose upon [the respondent], through the courts, a wage scale upon which there was no agreement during the collective bargaining process" (*id.* at 823).

That, as the majority points out, the two worker groups in *Trerotola* were represented by the same union is a distinction without a meaningful difference. The cornerstone of *Trerotola* was not that the workers were represented by the same union in contract negotiations—the point was that the workers could

---

* In *Litman v Board of Educ. of City of N.Y.* (170 AD2d 194 [1st Dept 1991]), not cited by either party, this Court ruled that an agreement between the teachers' union and the Board of Education that modified a collective bargaining agreement so as to provide for increased wage rates and benefits only to certain special education teachers did not violate constitutional guarantees of equal protection because the salary differential met valid state objectives. In so doing, we implicitly recognized that a cause of action had been stated. However, in *Litman*, in contrast to the situation here, the proceeding was commenced by individual teachers who were adversely affected by the agreement, not by the union that had reached the agreement through collective bargaining.

have bargained for a higher salary, and could not, having failed to do so, obtain relief from the court with respect to the salary set by the collective bargaining agreement. The majority's position that petitioner has no ability to control pay disparity through collective bargaining is perplexing. Petitioner has been representing SS-Is since 1997, and has negotiated and agreed to multiple collective bargaining agreements and salary schedules, all with the knowledge of the salary schedules for the SS-IIs and the nature of the work assigned to the different classes of workers. Petitioner need not represent both SS-Is and SS-IIs to be able to negotiate a salary for SS-Is that is comparable to that of their SS-II counterparts.